(649 P.2d 419)
No. 53,122

STATE OF KANSAS *ex rel.* ROBERT T. STEPHAN, Attorney General, *Appellant,* v. BROTHERHOOD BANK AND TRUST CO., *Appellee.*

Opinion filed August 12, 1982.

*Jeffrey S. Southard,* assistant attorney general, and *Robert T. Stephan,* attorney general, for the appellant.

*Thomas E. Osborn,* of Corson & Osborn, P.A., of Kansas City, for the appellee.

Before SPENCER, P.J., PARKS, J., and RONALD D. INNES, District Judge Assigned.

PARKS, J.: This action was brought by the attorney general, on behalf of the State of Kansas, against the defendant Brotherhood

Bank and Trust Co. (Bank), for violations of the Kansas Consumer Protection Act (KCPA). Defendant's motion to dismiss for failure to state a claim upon which relief may be granted was denied; however, the action was dismissed by the trial court as barred by the statute of limitations. Plaintiff appeals the dismissal and defendant cross-appeals the court's refusal to sustain its other ground for dismissal.

In June 1975, Mr. and Mrs. Matthew Skradski signed a promissory note and first mortgage agreement with the Brotherhood Bank and Trust Co. in connection with a loan for the purchase of a single family residence. The petition, filed by the attorney general on August 14, 1980, alleges that at no time during the course of the transaction were the Skradskis informed by the Bank that the loan had a "balloon payment" feature whereby the balance of the unpaid principal became due at the end of five years, and that this failure constituted a deceptive act and unconscionable practice under the KCPA. The trial court sustained the Bank's motion to dismiss on the ground that the statute of limitations controlling actions upon liability created by statute (K.S.A. 60-512) had run as to this action.

The attorney general appeals contending that the State is the real party in interest and that the statute of limitations did not run against it. Defendant cross-appeals arguing that plaintiff's KCPA action is preempted by more specific statutory regulation of lending practices. In addition, following oral argument, this court, on its own motion, questioned whether the home loan mortgage transaction which underlies this suit is a consumer transaction as defined in K.S.A. 50-624(c). The parties were requested to brief this issue in accordance with the cautionary guidelines set forth in *State v. Puckett,* 230 Kan. 596, 601, 640 P.2d 1198 (1982). Thus, we shall first consider this point.

K.S.A. 50-624(c) defines the term "consumer transaction" as follows:

" 'Consumer transaction' means a sale, lease, assignment or other disposition for value of property or services within this state (except insurance contracts and securities regulated under federal or state law) to a consumer or a solicitation by a supplier with respect to any of these dispositions."

Arguably, the extension of credit to an individual for the purpose of purchasing a residence is an "other disposition for value of property." Credit, which is what the Skradskis actually

received from the bank, is the right granted by a creditor to a debtor to defer payment of debt or to incur debt and defer its payment. K.S.A. 16a-1-301(14). Without doubt, credit is valuable, personal and intangible and could conceivably be included within the definition of property as intangible personal property. K.S.A. 50-624(*g*). However, the fundamental rule of statutory construction, to which all others are subordinate, is that the purpose and intent of the legislature governs when that intent can be ascertained from the statute. *Kansas State Board of Healing Arts v. Dickerson,* 229 Kan. 627, 630, 629 P.2d 187 (1981). In determining legislative intent, courts are not limited to a mere consideration of the language used, but look to the historical background of the enactment, the circumstances attending its passage, the purpose to be accomplished and the effect the statute may have under the various constructions suggested. *Arredondo v. Duckwall Stores, Inc.,* 227 Kan. 842, 845, 610 P.2d 1107 (1980).

As originally enacted in 1973, the KCPA included within the definition of consumer "a person other than an organization who seeks or acquires  .  .  .  goods, services, money or credit for personal, family, household or agricultural purposes." K.S.A. 1975 Supp. 50-624. The inclusion of "money or credit" in this act clearly indicates an intent to include pure lending transactions unaccompanied by the purchase of merchandise, within the scope of the KCPA. However, in 1976 the definitions found in K.S.A. 1975 Supp. 50-624 were amended significantly. The definition of consumer was altered by the omission of the words "goods", "money or credit" and the insertion of "property" in the following manner.

"(*b*) 'Consumer' means a person other than an organization *an individual* who seeks or acquires:
    (1) Goods or services used or provided in his business; or
    (2) goods, *property or* services, money or credit for personal, family, household, business or agricultural purposes."
L. 1976, ch. 236, § 2.

The following definition of "goods" was deleted:

"(*e*) 'Goods' includes any property, tangible or intangible, real, personal or mixed, or any other object, ware, merchandise, commodity or thing of value wherever situated, within or without the state of Kansas."
L. 1976, ch. 236, § 2.

"Property" was defined to include real estate, goods and intangible personal property. L. 1976, ch. 236, § 2 (g).

Defendant contends that excision of the words "money or credit" from the definition of consumer clearly evidences the decision of the legislature to delete coverage of the home mortgage loan from the scope of the KCPA. The State counters by pointing out that during the same committee hearings in which "money or credit" was deleted, the following specific exclusion was proposed to be included in the definition of consumer transaction:

"(c) 'Consumer transaction' means a sale, lease, assignment or other disposition for value of goods, a service, or an intangible *property or services within this state* (except insurance contracts, *credit extended by a lender* and securities regulated under federal or state law) to a consumer or a solicitation by a supplier with respect to any of these dispositions."
H.B. 2733, § 2 (1976).

The proposed language specifically excepting coverage of credit extended by a lender was rejected in committee and the minutes appear to indicate a desire to continue coverage of credit transactions. The mere fact that the specific exemption was proposed could indicate a belief that pure credit transactions would still be included within the KCPA even though the words "money or credit" were deleted. On the other hand, the proposed exclusion could have been intended to clarify the intent to delete credit transactions already evidenced by the excision of "money or credit," while rejection of the additional exception by the committee reflected the belief that the narrowed scope was already accomplished. In sum, the significance of the legislative history is ambiguous.

Although the legislative history is open to several interpretations, the guiding principle to be applied in interpreting the KCPA is that the act is to be liberally construed in favor of the consumer. K.S.A. 50-623; *Willman v. Ewen,* 230 Kan. 262, 267, 634 P.2d 1061 (1981); *State ex rel. Miller v. Midwest Serv. Bur. of Topeka, Inc.,* 229 Kan. 322, 328, 623 P.2d 1343 (1981). The terms and definitions of the KCPA are all very broad with the exception of the specific exclusion of insurance contracts and securities regulated by federal law. Thus, if the legislature wanted to omit mortgage transactions from the act, it would have been consistent with the statutory scheme to have specifically excluded it. We conclude that the plain language of K.S.A. 50-624(c) coupled with the preference for a liberal construction of the act requires us to

hold that the loan transaction in this case falls within the definition of a "consumer transaction" and is subject to the provisions of the KCPA.

Having determined that the loan transaction is subject to the KCPA, we next consider whether the statutes of limitation apply when the action is brought by the attorney general.

Generally, statutes of limitation do not run against the State unless specifically provided by statute. *State ex rel. Schneider v. McAfee,* 2 Kan. App. 2d 274, Syl. ¶ 2, 578 P.2d 281 (1978). The KCPA does not contain any such limitation; however, this rule may not apply if the state is merely a nominal party to the action (*State, ex rel., v. Masterson,* 221 Kan. 540, 561 P.2d 796 [1977]), or if the action arises out of the performance of a nongovernmental or proprietary function. *State ex rel. Schneider,* 2 Kan. App. 2d at 275. The Bank argued, and the trial court held, that the statute of limitations did apply because the State was not the real party in interest.

The requirement that "[e]very action shall be prosecuted in the name of the real party in interest" means that the action shall be in the name of the party who, by the substantive law, has the right sought to be enforced. *Henderson v. Hassur,* 225 Kan. 678, 681, 594 P.2d 650 (1979). K.S.A. 50-632 grants the attorney general the right to bring an action to have a practice declared illegal under the KCPA, to collect actual damages on behalf of aggrieved consumers, to seek civil penalties to be paid into the state's general fund (K.S.A. 1981 Supp. 50-636[a] and [c]) and to obtain reimbursement for reasonable expenses and investigation fees, K.S.A. 50-632(a)(4). In addition, this case is unlike those in which the state has been held to be only a nominal party because there is no statute of limitations within the substantive law which restricts the timing of the action. *Cf. State, ex rel., v. McKay,* 140 Kan. 276, 278, 36 P.2d 327 (1934) (statute of limitations did apply to suit against a former county treasurer and her surety for embezzlement and conversion of county funds because although it was required that the action be brought in the name of the State, the State had no actual monetary interest and there was a specific statute of limitation for actions on bonds).

Finally, the availability of various remedies, one of which would recompense an aggrieved consumer, does not necessarily diminish the authority or interest of the State in prosecuting the

action. In *Lawrence v. Boyd,* 207 Kan. 776, 779, 486 P.2d 1394 (1971), for example, the court held that an illegitimate minor is the real party in interest in an action by next friend to enforce the father's nonstatutory obligation to support despite the fact that the financial benefit from the action would accrue to the Social and Rehabilitation Services. Just as the minor child in *Lawrence* has an interest in establishing the paternal obligation independent from the financial gain to befall SRS, the State in this action has an interest in punishing and curtailing deceptive and unconscionable business practices separate from the reimbursement an aggrieved consumer might realize.

We conclude that the trial court erred in holding that the State was not a real party in interest in this lawsuit.

We now consider whether the filing of this action by the attorney general is a proprietary or a governmental function of the State. Governmental functions are those which are performed for the general public with respect to the common welfare and for which no compensation or particular benefit is received, while proprietary functions are exercised when an enterprise is commercial in character or is usually carried on by private individuals or is for the profit, benefit or advantage of the governmental unit conducting the activity. *State ex rel. Schneider,* 2 Kan. App. 2d at 276. The actual transaction underlying this action is a private one between individuals but the *action arises* out of the duty of the attorney general to enforce the Kansas Consumer Protection Act.

Defendant contends that the claim for actual damages will only benefit one particular consumer and that therefore in bringing this action, the State is merely a representative of private, proprietary goals. While it is true that one consumer may be particularly benefited, this fact does not detract from the general benefit reaped by the public which the KCPA seeks to foster.

The attorney general is granted broad investigatory and rule-making authority for the purpose of protecting the public from unscrupulous suppliers and is given the discretion to exercise these powers in a manner which will further the public interest. Furthermore, the attorney general is required to enforce the KCPA throughout the state and receive and act on complaints. K.S.A. 50-628; *State ex rel. Miller v. Midwest Serv. Bur. of Topeka, Inc.,* 229 Kan. at 324. Thus, it is clear that the KCPA was enacted in the interest of the public generally. Whether one

consumer, ten or one hundred consumers, may receive actual damages as a result of a suit by the attorney general does not diminish the overall benefit to the State's interest in protecting consumers against deceptive and unconscionable acts and practices.

In performing the duties required by the act, the attorney general acts in the interest of the State and for its benefit. Furthermore, there is no express provision in the act subjecting the State to all defenses which would be available against a private consumer. Therefore, we must conclude that an action brought by the attorney general, in his official capacity and exercising the authority conferred upon him by the KCPA, is a governmental function. Accordingly, we hold that the trial court erred when it ruled that this action was barred by the statute of limitations.

On cross-appeal the Bank claims that the trial court should have dismissed this action as being preempted by the federal Truth in Lending Act (TIL), 15 U.S.C. § 1601 *et seq.* (1976), which requires that certain disclosures be made in the extension of credit to consumers, and the Kansas Consumer Credit Code (UCCC), K.S.A. 16a-1-101 *et seq.*

Defendant Bank relies on the rule in *Chelsea Plaza Homes, Inc. v. Moore,* 226 Kan. 430, 432, 601 P.2d 1100 (1979), which states that statutes complete in themselves relating to a specific thing take precedence over general statutes or over other statutes which deal only incidentally with the same question. The underlying premise of this rule is that the most specific statute is also the clearest expression of legislative intent. See *State, ex rel., v. Throckmorton,* 169 Kan. 481, 486, 219 P.2d 413 (1950). Thus, the *Chelsea Plaza* principle is a device for determining which of two state statutes the legislature intended to apply to a particular situation. A conflict between a state and federal law poses different preemption issues to be resolved by interpretation of the supremacy clause of the U.S. Constitution. U.S. Const. art. VI, cl. 2.

A suit under the KCPA in this case does not conflict with any other state statute since the UCCC specifically excludes first mortgages from its coverage. K.S.A. 16a-1-301(13)(*b*)(i). Thus, the rule of *Chelsea Plaza* has no application to this case. Any possible preemption would have to result from a conflict with the federal

law which may be enforced in Kansas courts by virtue of 15 U.S.C. § 1601 *et seq.* and Regulation Z (12 C.F.R. § 226.1 *et seq.*). There is, however, no direct conflict between the KCPA and the federal TIL Act. Moreover, the federal act clearly states the congressional intent not to preempt state regulation of consumer transactions in the following provision:

"(a) **Inconsistent provisions.** This subchapter [15 U.S.C. §§ 1601 *et seq.*] does not annul, alter, or affect, or exempt any creditor from complying with, the laws of any State relating to the disclosure of information in connection with credit transactions, except to the extent that those laws are inconsistent with the provisions of this subchapter [15 U.S.C. §§ 1601 *et seq.*] or regulations thereunder, and then only to the extent of the inconsistency."
15 U.S.C. § 1610 (a).

Clearly, Congress did not intend to preempt state regulation of credit transactions through passage of the TIL. We therefore conclude that the trial court did not err in refusing to find that the KCPA was preempted by the TIL. See *Maryland v. Louisiana,* 451 U.S. 725, 746, 68 L.Ed.2d 576, 101 S.Ct. 2114 (1981).

Judgment is reversed and the case is remanded with directions to proceed to trial on the merits.