**In re Brenda Denise ANDREWS a/k/a Brenda Andrews a/k/a Brenda Denise Newberry, Debtor.**

**Brenda Denise ANDREWS a/k/a Brenda Andrews a/k/a Brenda Denise Newberry, Plaintiff,**

**v.**

**FLEET REAL ESTATE FUNDING CORPORATION, Defendant.**

**Bankruptcy No. 86–05932S.
Adv. No. 87–0340S.**

United States Bankruptcy Court, E.D. Pennsylvania.

Sept. 24, 1987.

As Amended Oct. 23, 1987.

---

Theodore Clattenburg, Jr., Community Legal Services, Inc., Philadelphia, Pa., for debtor/plaintiff.

Gary McCafferty, Philadelphia, Pa., for defendant.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

In this case, we decide that, due to the wording of the mortgage in issue, the mortgagee is not authorized to measure "late charges" which may be imposed upon the mortgagor for tardy payments by reference to the entire monthly payment, as is the general practice, but by reference to only that portion of the payment attributable to principal and interest.

We also hold that the improper past collection of excess late charges is actionable under the Pennsylvania statute regulating "unfair or deceptive acts or practices," 73 P.S. § 201–1, et seq. (referred to herein after as "UDAP"). However, we refuse the mortgagor's invitation to transform our first two holdings into a treasure trove for the mortgagor, and conclude that, given the particular facts here, the mortgagee's repeated overcharges should be deemed a single "method, act or practice" entitling the mortgagor to one award of treble the entire sum of overcharges imposed by the mortgagee. We shall consequently reduce the mortgagee's Proof of Claim by the modest sum of $250.85.

The Debtor, BRENDA DENISE ANDREWS, filed her underlying Chapter 13 bankruptcy case on December 31, 1986. On April 13, 1987, she commenced the instant Adversary proceeding challenging

the secured Proof of Claim filed by FLEET REAL ESTATE FUNDING CORPORA-TION, the holder of the first mortgage on her residence (referred to hereinafter as "the Mortgagee") in the amount of $11,-021.59 for arrearages and $22,640.88 for the total debt. The Complaint, as amend-ed, raised a number of issues, which, when the parties came before us on the designat-ed trial date of July 15, 1987, their respec-tive counsel advised us has been resolved except that related to the imposition of "late charges" by the mortgagee. On that day, we entered an Order directing the parties to file a Stipulation of Facts relat-ing to the remaining relevant issue on or before July 24, 1987, and to submit Briefs pursuant to a schedule to be completed on September 14, 1987.

The brief Stipulation of Facts had at-tached thereto the pertinent mortgage and note of October 30, 1979, in favor of Forbes Mortgage Co., which were assigned to the Mortgagee on October 1, 1980. From Jan-uary 1, 1981, through December 31, 1986, the Debtor had paid $375.07 in late charges, computed at four (4%) percent of the entire monthly mortgage payment of $199.22, i.e., $7.96 per month. However, the parties further stipulated that seventy-two (72) late charges were due as of De-cember 31, 1986.

The Debtor, by dividing $375.07 by $7.96, ascertained that forty-seven (47) late charges had been collected from her by the Mortgagee as of December 31, 1986. An-other thirty-two (32) such charges were alleged to be due and unpaid per the Mort-gagee's Proof of Claim, filed February 17, 1987.

■ The parties agree that the pertinent portions of paragraph two of the Mort-gage, relating to late charges collectible, provide as follows:

2. To more fully protect the security of this Mortgage, the Mortgagor shall pay to the Mortgagee as trustee (under the terms of this trust as hereinafter stated) *in addition to and concurrently with, each monthly installment of principal and interest until said Note is fully paid*, the following sums:

(a) A sum equal to the ground rents, if any, next due, plus the premiums that. will next become due and payable on policies of fire and other hazard insur-ance, plus taxes, assessments, and sewer and water rents, next due on the premis-es covered by this Mortgage (all as esti-mated by the Mortgagee, and of which the Mortgagor is notified) less all sums already paid therefor divided by the num-ber of months to elapse before one month prior to the date when such ground rents, premiums, taxes, assess-ments, and sewer and water rents, will become due, such sums to be held by Mortgagee in trust to pay said ground rents, premiums, taxes, assessments, and sewer and water rents....

Any deficiency in the amount of any *such aggregate monthly payment* shall constitute an event of default hereunder and under said Note, unless made good by Mortgagor prior to the due date of the next such payment. At Mortgagee's option, *Mortgagor will pay a "late charge" not exceeding four per centum (4%) of any installment* when paid more than fifteen (15) days after the due date thereof to cover the extra expense in-volved in handling delinquent payments, ... (emphasis added).

The Debtor points out that both the mortgage and the note, like the first por-tion of paragraph two of the Mortgage emphasized above, make reference to "monthly installments" of $162.72, which is the amount of the monthly payment attrib-utable to principal and interest only. Meanwhile, the total sum due each month, $199.22, is referred to in the second portion of paragraph two emphasized above, as the "aggregate monthly payment." Thus, ar-gues the Debtor, the reference to "four per centum (4%) of any *installment*" in the third portion of paragraph two emphasized above must mean that four (4%) percent is to be taken of $162.72, referred to else-whereas the monthly installment, not $199.22, the "aggregate monthly pay-ment," in calculating the late charges. As a result, the Debtor contends that the prop-er monthly late charges should have been

four (4%) percent of $162.72, or $6.51, not four (4%) percent of $199.22, or $7.96. Thus, the Debtor concludes that she has been overcharged $1.45 in late charges on the forty-seven (47) occasions when late charges were imposed in the past, and would be overcharged $1.45 as to each of the thirty-two (32) months for which late charges are claimed to be due in the Mortgagee's Proof of Claim.

This argument is as lucid as it is ingenious. The Mortgagee, apparently transfixed thereby, is forced to concede that "the analysis of the meaning of the word 'installment' in the contractual language ably set forth in Debtor's brief is probable [sic] the best interpretation." Defendant's Brief in Opposition to Complaint Objecting to Secured Claim of Fleet Real Estate Funding Corporation, at 8. The most that is said by the Mortgagee, in attempting to defend against the thrust of the Debtor's UDAP claim, is that "it can not be said that the language is completely unambiguous." *Id.* Thus, the effective thrust of the Mortgagee's reply is not that it was correct in imposing late charges of $7.96 monthly, but that it did not do so without some colorable right to do so and hence did not intentionally overcharge the Debtor.

It is well-established that any ambiguities in a contract, particularly in an adhesion contract in which there was doubtless no bargaining over terms, must be construed strictly against the party who drafted the contract. *See, e.g., In re Tashjian,* 72 B.R. 968, 976 (Bankr.E.D.Pa.1987); *In re Jablonski,* 70 B.R. 381, 389 (Bankr.E.D. Pa.1987); and *In re United Nesco Container Corp.,* 68 B.R. 970, 973 (Bankr.E.D. Pa.1987). Since the Mortgagee, as an assignee, steps into the shoes of Forbes Mortgage Co., the drafter of the adhesion contract, the admitted ambiguity in the foregoing passages must be construed against the Mortgagee.

Hence, although, in our experience, the general practice is to compute late charges by taking a given percentage—typically the four (4%) percent figure in the mortgage here—of the entire mortgage balance, we are compelled to sustain the Debtor's contention that the proper construction of the mortgage here is that late charges may be computed by taking four (4%) percent of the sum of only the principal and interest.

This holding sets the stage for the issue to which the parties devote almost all of their attention in their respective Briefs, i.e., the application and impact of UDAP to this factual setting. Apparently conceding that UDAP generally applies to mortgage loan transactions, as per our holdings to that effect in *In re Jungkurth,* 74 B.R. 323, 334–35 (Bankr.E.D.Pa.1987); and *In re Russell,* 72 B.R. 855, 870–72 (Bankr.E.D. Pa.1987), the Mortgagee contends that there are three "hurdles" which the Debtor must clear here before she can invoke 73 P.S. § 201–9.2(a), that provision of UDAP giving rise to a private cause of action to remedy violations of the Act.

The pivotal section of UDAP, 73 P.S. § 201–9.2(a), provides as follows:

§ 201–9.2 Private actions

(a) Any person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of any person of a method, act or practice declared unlawful by section 3 of this act, may bring a private action in the court of common pleas of the county or judicial district in which the seller resides or has his principal place of business or is doing business or in which the transaction took place or where the buyer resides, to recover actual damages or one hundred dollars ($100), whichever is greater. The court may, in its discretion, award up to three times the actual damages sustained, but not less than one hundred dollars ($100), and may provide such additional relief as it deems necessary or proper.

The "hurdles" designated by the Mortgagee are as follows: (1) Establishing that a mortgage loan transaction is a purchase of goods or services; (2) Proving that the Mortgagee, not a party to the original mortgage transaction, engaged in any fraud or misrepresentation which caused

the Debtor to enter into the transaction; and (3) Showing "actual damages" or an "ascertainable loss of money," in light of the fact that the Mortgagee has, to date, collected only $375.07 of $468.72 (72 payments due × $6.51) admittedly accurate late charges.[1]

■ In *Russell, supra,* we applied 73 P.S. § 201–9.2(a) to acts of a mortgagee in a consumer loan transaction. In so doing, we cited to the Pennsylvania state court holdings in *Commonwealth v. Monumental Properties, Inc.,* 459 Pa. 450, 457–78, 329 A.2d 812, 815–26 (1974); and *Culbreth v. Lawrence J. Miller, Inc.,* 328 Pa.Super. 374, 380–83, 477 A.2d 491, 495–96 (1984), that UDAP is to be broadly construed; to lower court cases applying UDAP in loan transactions, *Iron & Glass Bank v. Franz,* 9 Pa.D. & C.3d 419, 426–30 (Alleg.Co.C.P. 1978); and *Commonwealth ex rel. Zimmerman v. Nickel,* 26 Pa.D. & C.3d 115, 127–31, 133–35 (Mercer Co.C.P.1983); and to rulings in the interpretation of UDAP statutes in other states. *Garland v. Mobil Oil Corp.,* 340 F.Supp. 1095, 1099 (N.D.Ill. 1972); *State v. Brotherhood Bank & Trust Co.,* 8 Kan.App.2d 57, 649 P.2d 419, 421–23 (1982); and *Riverside National Bank v. Lewis,* 572 S.W.2d 553, 558–60 (Tex.Civ. App.1978).

Although we did not recite our holding in these terms, we have no hesitancy in concluding that, as the parties put it here, "the business of mortgage lenders is the sale of a service" within the scope of UDAP. All of the foregoing authorities support that same conclusion as to loans generally. There is no reason why the presence of a mortgage as a security document in a loan transaction should make any difference in this result. We note that the lender in *Russell* was a mortgagee, and hence that a mortgage transaction was in issue there.

■ The Mortgagee here further argues that its status as an assignee of the mortgage distinguishes its status here from that of the lender in *Russell.* This issue,

we believe, segues into the second "hurdle" erected by the Mortgagee, a claim that some measure of fraud or misrepresentation on its part is necessary to permit the invocation of UDAP against it.

A careful reading of the *Russell* decision reveals that we addressed and also resolved this second issue contrary to the Mortgagee in that decision. There, we held that *any* violation of certain consumer protection legislation constituted a violation of 73 P.S. § 201–2(4)(xvii), and thus a violation of 73 P.S. § 201–3 within the scope of § 201–9.2(a), *per se.* 72 B.R. at 871. Thus, we established that the commission of an illegal act by a lender in a transaction within the scope of UDAP gave rise to a violation of, and a cause of action under, UDAP, irrespective of the *mens rea* of the party charged with the violation.

This reasoning, as the Debtor here points out, is supported historically by the interpretations of the Federal Trade Commission (hereinafter referred to as "FTC") Act by the United States Supreme Court. Thus, it is totally appropriate for us to consider the holding of *FTC v. Algoma Lumber Co.,* 291 U.S. 67, 79–81, 54 S.Ct. 315, 320–21, 78 L.Ed. 655 (1934), that the innocence of the motives of the defendant is irrelevant to the determination of whether there has been an actionable UDAP violation, and that "there is a kind of fraud, as courts of equity have long perceived, in clinging to a benefit which is the product of misrepresentation." *Id.* at 81, 54 S.Ct. at 321. *See also, e.g., FTC v. Colgate-Palmolive Co.,* 380 U.S. 374, 390–92, 85 S.Ct. 1035, 1045–47, 13 L.Ed.2d 904 (1965).

In *Monumental Properties, supra,* the Pennsylvania Supreme Court held that UDAP "has regularly been interpreted ... as being based on the Federal Trade Commission Act," 459 Pa. at 461, 329 A.2d at 817, and the Court then proceeded to cite FTC decisions in support of its holding that UDAP applied to lease transactions. 459

---

1. The Mortgagee, states that the total of late charges admittedly due is $480.24 and the amount collected was $357.07. However, the difference is due to an erroneous transposition of the $375.07 figure in the Stipulation to

$357.07, and computation of the admittedly accurate charges by utilizing a $6.67 multiplier for calculation of the correct monthly late charge. The $6.67 figure is recited in the Debtor's Complaint, but is corrected to $6.51 in its Brief.

Pa. at 463–65, 329 A.2d at 818–20. *Accord, Nickel, supra,* 26 Pa.D. & C.3d at 120–21. To the extent that *Mason v. National Central Bank,* 19 Pa.D. & C.3d 229, 232 (Chester Co.C.P.1980), can be read as holding to the contrary, we decline to follow it.[2]

■ We therefore reject the Mortgagee's contention that actual fraud or willful misrepresentation or deception is a necessary element of a cause of action under UDAP. We believe that the fact that late charges were imposed contrary to the terms of the underlying mortgage contract is sufficient to establish a cause of action against the Mortgagee under UDAP.

This being so, the lack of personal involvement of the Mortgagee in the mortgage transaction itself is immaterial. The Mortgagee obviously succeeded to the same rights as the original mortgagee was accorded in the mortgage, and chose to impose late charges upon the Debtor measured in a manner which we have held, and it practically concedes, is violative of the mortgage contract, to the detriment of the Mortgagee. We believe that this course of action suffices to constitute a UDAP violation on the Mortgagee's part.

■ The third "hurdle" suggested by the Mortgagee is a contention that the Debtor has failed to establish the requisite "actual damages" to entitle her to a UDAP recovery. The basis of this contention is the observation that the Mortgagee has collected only $375.07 of a potential of $468.72 which the Debtor admits would be the sum of properly collectible late charges to date.[3] There are two responses to this argument, one based upon a clear perspective of the facts and the other based upon a proper interpretation of 73 P.S. § 201–9.2(a).

The facts do *not,* as the Mortgagee suggests, support the conclusion that it has voluntarily foregone imposition of late charges measurable on the objectionable formula of four (4%) percent of the entire mortgage payment, or $7.96 per month. Although the Mortgagee has, per the parties' factual Stipulation, only *collected* forty-seven (47) months of late charges to date, it demands, in its Proof of Claim, thirty-two (32) more late charges, also measured, per its Proof of Claim, at $7.96 monthly. The sum of the months for which late charges have been collected (47) and for which they are demanded (32) exceeds the seventy-two (72) months for which such charges were admittedly due. The Mortgagee simply had not yet succeeded in collecting all of the late charges demanded as of the date of the Debtor's filing. There is, therefore, no reason to "set off" the charges due to months which have been demanded but not yet collected against the sums already collected, as the Mortgagee suggests that we should do. Hence, we conclude that, in the forty-seven (47) instances in which the Mortgagee imposed late charges to date, it has inflicted damages of $1.45 in each instance, and the Debtor has indeed suffered a loss of forty-seven (47) times $1.45, or $68.15, as a result of the Mortgagee's actions in violation of the mortgage contract in collection of late charges.

■ The requirement that a consumer invoking 73 P.S. § 201–9.2(a) may only recover "actual damages" occasioned to an "ascertainable loss of money or property" must be read in light of the interpretation of those terms in *Brunwasser v. Trans World Airlines, Inc.,* 541 F.Supp. 1338,

---

**2.** The decision of the district court in *DiTeodoro v. J.G. Durand Int'l,* 566 F.Supp. 273 (E.D.Pa. 1983), cited by the Mortgagee, although referring to *Mason* with apparent approval, does not support the Mortgagee's cause. The court there, on facts which are not clearly set forth in the Opinion but appear to relate to an allegedly false representation that dishes sold by the Defendant to the Plaintiff were "unbreakable," *denied* the Defendant's Motion to Dismiss a UDAP claim.

Further, in *In re Joyce,* 41 B.R. 249, 252 (Bankr. E.D.Pa.1984), also cited by the Mortgagee, this court dismissed a UDAP claim because of its finding that the Debtor there failed to prove the substance of her claim, not on the ground that UDAP was inapplicable, as we pointed out in *Russell, supra,* 72 B.R. at 872.

Thus, neither *DiTeodoro* nor *Joyce* support the position of the Mortgagee.

**3.** See page 82 n. 1 *supra,* where we indicate our reasons for revising the mathematics in the Mortgagee's calculations of these sums.

1346–47 (W.D.Pa.1982). There, after appropriately noting the broad remedial purposes of UDAP expressed in *Monumental Properties,* the court rejects the defendant's request that the court

> take a narrow view of the term ascertainable loss and require that the plaintiff plead a specific ascertainable loss of money or property in order to maintain a cause of action under this act. Such an interpretation would severely undercut the remedial framework established by the statute. It would, in effect, limit the class of plaintiffs to those individuals who could show specific liquidated damages as a result of an unfair trade practice, *id.* at 1347,

which the *Brunwasser* court was unwilling to do. To the extent that the *Mason* decision can be read to the contrary, we reject its reasoning here, as we did in *Jungkurth, supra,* when we held that "a deceptive act should be penalized by a liberal measure of the reasonable consequences of the act to the injured party." 74 B.R. at 336.

Further, in *Jungkurth, supra,* we pointed out one additional reason why the Debtor here should be permitted to attack the Mortgagee's Proof of Claim on the basis of a UDAP violation by the Mortgagee, even assuming that the Debtor's cause of action was not within the scope of 73 P.S. § 201–9.2(a). There, we were faced with an attempt to apply 73 P.S. § 201–9.2(a) to a business loan transaction. Although we doubted whether § 201–9.2(a) could be applied to a business loan, despite the general application of UDAP to the transaction, we nevertheless held that damages arising from a violation of UDAP could be claimed as a recoupment against the lender's Proof of Claim. 74 B.R. at 336. So, here, even if it could be argued that 73 P.S. § 201–9.2(a) does not apply to this particular transaction, a holding which we decline to make here, the conclusion that the Debtor would not be able to reduce the Mortgagee's Proof of Claim by the amount of the damages arising from the Debtor's UDAP claim does not follow.

■ However, we part company with the Debtor when she contends that she could receive damages of $4,700.00 as a consequence of the Mortgagee's wrongdoing to her. The actual monetary damages caused by the Mortgagee's actions appear to be limited to $68.15 in excess charges collected and an excess demand of $46.40 for unpaid late charges. It is doubtful that this small effort of the Mortgagee to augment its rightful late charges caused even any emotional or other consequential damages of any sort to the Debtor, which, as we held in *Jungkurth, supra,* 74 B.R. at 336, are indeed "actual" and "ascertainable" damages. Consequently, we believe that it would be draconian to impose a $4,700.00 penalty upon the Mortgagee for its violation of the parties' contract and UDAP here.

Therefore, in this factual context, we are inclined to hold that it is only a single "method, act, or practice" of the Mortgagee here which we have deemed violative of UDAP. Thus, we find that the Debtor is entitled to recover three times her actual damages of $68.15, or $204.45, and to reduce the late charges of $254.72 demanded by the Mortgagee's Proof of Claim by the excessive charge of $46.40, but no more.

We do wish to emphasize that the holding is not to be construed as a determination that every repetitive UDAP violation should be adjudged to be a single "method, act, or practice" for purposes of measuring damages under 73 P.S. § 201.9–2(a). We can conceive of many situations—*e.g.,* UDAP violations in a series of separate contracts, or a series of abusive collection practices, as in *Jungkurth*—where we would find each separate illegal act to be a separate "method, act, or practice." However, the practical consequences of such an interpretation here cause us to recoil from doing so here.

Because of the repeated nature of the Mortgagee's conduct, we do not hesitate to exercise our discretion to award treble damages to the Debtor. *Cf. Russell, supra,* 72 B.R. at 872. However, the Mortgagee can scarcely complain when the alternative to our trebling the Mortgagee's damages of $68.25 to arrive at an award of damages of $204.45 for the improper exces-

sive collections would be imposing the minimum $100.00 damage-figure to each of forty-seven (47) transactions, and awarding $4,700.00 in damages, as the Debtor urges. Added to the $46.40 which must be deducted from the demand for unpaid late charges in the Mortgagee's Proof of Claim, the total amount which the Mortgagee must reduce its Proof of Claim, as a result of its violations of the contract in issue and UDAP, is a rather modest sum of $250.85.

■ However, we do believe that the Debtor here may have uncovered a recurrent practice whereby this Mortgagee, and perhaps others, have imposed excessive late charges in violation of the terms of the mortgage. Thus, we will not hesitate to reward the Debtor's counsel for his ingenuity in successfully challenging a generally accepted practice by allowing counsel to make a claim for reasonable attorney's fees which we held, both in *Russell*, 72 B.R. at 873; and *Jungkurth*, 74 B.R. at 336, are allowable as "additional relief" to successful parties making claims under 73 P.S. § 201–9.2(a).

An Order consistent with this Opinion shall be entered.

Myron Bloom, Adelman Lavine Gold & Levin, Philadelphia, Pa., for Union Nat. Bank and Trust Company and Univest Mortg. Co.

Jonathan Ganz, Pincus, Verlin, Hahn & Reich, Philadelphia, Pa., for debtor, Richard Paolino.

Jeffrey Meyers, Philadelphia, Pa., for Elaine Paolino.

Michael H. Reed, Pepper, Hamilton & Scheetz, Philadelphia, Pa., for Herbert Brener, trustee.