**In re Carl WERNLY, Debtor.**

**Carl WERNLY, Plaintiff,**

v.

**Kenneth ANAPOL t/a America Check Cashing, Defendant.**

Bankruptcy No. 87–03980S.
Adv. No. 88–0392S.

United States Bankruptcy Court,
E.D. Pennsylvania.

Sept. 30, 1988.
As Amended Dec. 16, 1988.

Theodore Clattenburg, Jr., Mary Jeffery, Community Legal Services, Inc., Philadelphia, for plaintiff/debtor.

Ronald Clearfield, Gary McCafferty, Philadelphia, for defendant.

Kenneth Anapol, Huntingdon Valley, Pa., America Check Cashing, Philadelphia, Pa., pro se.

Edward Sparkman, Philadelphia, Pa., standing Chapter 13 trustee.

## ADJUDICATION

DAVID A. SCHOLL, Bankruptcy Judge.

### A. FINDINGS OF FACT

1. The Plaintiff in this proceeding is CARL WERNLY, the Debtor in a Chapter 13 bankruptcy case filed on August 6, 1987. This proceeding was commenced on March 11, 1988, and was tried on July 13, 1988.

2. The individual Defendant, KENNETH ANAPOL, appeared pro se at the hearing and testified on his own behalf. When the Debtor indicated an intention to amend the Complaint to change the designation of the Defendant, originally sued as a business designated as "American Check Cashing Agency," we required the Plaintiff to file a Motion to amend the Complaint and stated that we would establish a briefing schedule at the hearing on the Motion.

3. The Defendant chose not to attend the hearing on the Motion to amend on August 18, 1988. We granted the motion to amend and issued an Order allowing the Debtor and the Defendant until September 6, 1988, and September 26, 1988, respectively, to file Proposed Findings of Fact, Conclusions of Law, and any Brief. Although the Debtor remitted a timely submission, the Defendant chose not to make any submissions or communications to us pursuant to this Order.

4. On March 23, 1987, the Debtor obtain three retroactive lump-sum social security checks which totaled $11,171.00.

5. On that date, the Debtor visited defendant's business establishment seeking to cash the checks, as he had done on numerous occasions in the past to cash welfare, social security and SSI checks.

6. The Debtor was attended by the individual Defendant personally.

7. The Debtor testified that he endorsed and gave the social security checks to the Defendant, who paid him cash totalling $10,015.00, a difference of $1,156.00, which represented the Defendant's fee for cashing the checks in issue.

8. The Debtor testified that he questioned the Defendant about the fee, but the Defendant replied that his fee was cheaper than what it would cost the Debtor to cash the checks through a bank because he would have to pay $3,000.00 or more in taxes on the money if he deposited the checks with a bank, and that the large amount of the checks would tie up the Defendant's cash for several days.

9. The Defendant testified that he did not recall the transaction in detail, maintained no records, and did not issue receipts which would reflect the net sum received by the Debtor in the transaction. He stated that he believed that he only charged the Debtor $221.00 (actually two (2%) percent of $11,171.00 is $223.42), because the standard maximum charge in the check-cashing industry was two (2%) percent and he believed that he would have charged no more than this amount.

10. We find the Debtor's testimony more credible than that of the Defendant regarding the amount charged to the Debtor for the check cashing service. His testimony was far more detailed and clear. As a businessman, it behooved the Defendant to maintain records and his failure to do so

permits adverse inferences to be drawn against him.

11. We also find the charge imposed by the Defendant to be unconscionable. The Defendant's own testimony permits us to conclude that two (2%) percent charge is adequate to cover all overhead in this "industry."

12. However, we fail to find that the Debtor's recitations concerning the alleged misrepresentations totally credible. Further, even if these were accurate, we fail to find that the Debtor reasonably relied on these statements, which could have been easily refuted by the reasonable investigation concerning same by the Debtor. For example, the Debtor could have easily checked with a bank or any other agency or person as to whether these statements were true.

## B. CONCLUSIONS OF LAW

■ 1. The Debtor's cause of action under 11 U.S.C. §§ 548(a)(2), 522(h), and 522(g)(1) is premised on our finding that his check-cashing transaction was an "involuntary transfer" for less than reasonable value while the Debtor was insolvent. The elements of insolvency, *see* 11 U.S.C. §§ 101(31)(A)(ii), 522(d)(10)(A), and payment of greater than a reasonable value for the services received are made out. We believe that this transaction, like the sales transaction in *In re Wernly, Wernly v. Durham, et al.*, Bankr. No. 87–03980S, Adv. No. 88–0391S (Bankr.E.D.Pa. Sept. 16, 1988) [available on WESTLAW, 1988 WL 96198], is indeed a "transfer" as to the Debtor. However, we believe that, in order to be classified as an *involuntary* transfer, the misrepresentations on the part of the Defendant would have had to have been very substantial, raising to the level of fraudulent conduct, or at least must have represented the application of extraordinary sales pressure. *See Wernly, supra,* Adjudication at 5. *Compare In re Seidel,* 27 B.R. 347, 351 (Bankr.E.D.Pa. 1983); and *In re Reaves,* 8 B.R. 177, 181 (Bankr.D.S.D.1981) (creditors' pressuring debtors to make prepetition payments are involuntary transfers).

Here, the misstatements of the Defendant *appear to* have been, in large part, a sales pitch, the accuracy of which the Debtor could have easily investigated with a minimum of effort. As in the other *Wernly* case, *id.,* we conclude that the conduct of the Defendant here does not rise to the level of fraud, or application of extraordinary pressure, such as would be necessary to render the purchase involuntary. Therefore, we reject the Debtor's claim under §§ 548(a)(2), 522(h), and 522(g)(1).

■ 2. The Debtor's other cause of action depends on our finding that the Defendant engaged in "fraudulent conduct which creates a likelihood of confusion or misunderstanding," pursuant to 73 P.S. § 201–2(4)(xvii) of the Pennsylvania law regulating unfair and deceptive acts and practices (hereinafter "UDAP"), in assessing his check-cashing charges against the Debtor. We agree with the Debtor that the broad scope of UDAP should include the check-cashing industry. *Cf. In re Jungkurth,* 74 B.R. 323, 334–35 (Bankr.E. D.Pa.1987), *aff'd,* 87 B.R. 333 (E.D.Pa. 1988); and *In re Russell,* 72 B.R. 855, 870–72 (Bankr.E.D.Pa.1987). Further, any illegal conduct or conduct in violation of contract terms is actionable under UDAP, despite lack of our finding fraudulent intent. *See In re Andrews,* 78 B.R. 78, 82–83 (Bankr.E.D.Pa.1987).

We believe that the charges imposed upon the Debtor by the Defendant here were unconscionable. The Defendant himself admitted that they were five times more than the industry norm. In our view, this constitutes an actionable claim for the excess charges, which we calculate to be $1,156.00 less $223.42, or $932.58. The Debtor perhaps should have pleaded a cause for unjust enrichment against the Defendant. *See Efco Importers v. Halsobrunn,* 500 F.Supp. 152 (E.D.Pa.1980); and *Schott v. Westinghouse Electric Co.,* 436 Pa. 279, 259 A.2d 443 (1979). Alternatively, however, we believe that a claim is stated under UDAP under these circumstances as well. *Cf. In re Dukes,* 24 B.R. 404, 410–13 (Bankr.E.D.Mich.1982); and

*Kugler v. Romain,* 58 N.J. 522, 541–47, 279 A.2d 640, 650–54 (1971).

 Nevertheless, we do not find the Defendant's conduct so outrageous or repetitive, nor in direct violation of any law or contractual obligation between the parties, that an award treble damages under 73 P.S. § 201–9.2(a) of UDAP is appropriate. *Compare Andrews, supra,* 78 B.R. at 84–85 (repetitious conduct in violation of contract merits treble damages); *and Russell, supra,* 72 B.R. at 870–72 (extreme overreaching and violations of law merit treble damages).

Furthermore, we shall enhance the financial consequences of the Defendant's unconscionable actions by ordering him to pay reasonable counsel fees to the Debtor, pursuant to 73 P.S. § 201–9.2(a). *See Jungkurth v. Eastern Financial Services, Inc.,* 87 B.R. 333, 335 (E.D.Pa. 1988); *Andrews,* 78 B.R. at 85; *and Russell, supra,* 72 B.R. at 873. We believe that this award is sufficient.

### C. ORDER

AND NOW, this 30th day of September, 1988, judgment is entered in favor of the Plaintiff, CARL WERNLY, and against the Defendant, KENNETH ANAPOL t/a AMERICA CHECK CASHING, in the amount of $932.58.

In addition, the Debtor's counsel is accorded an opportunity to file a Motion requesting reasonable attorney's fees and costs pursuant to 73 P.S. § 201–9.2(a), within ten (10) days hereafter, said Motion to be procedurally in conformity with *In re Meade Land and Development Co., Inc.,* 527 F.2d 280 (3d Cir.1975); and *In re Mayflower Associates,* 78 B.R. 41 (Bankr.E.D. Pa.1987).