**In re Glyndon BRYANT, Debtor.**

**Glyndon BRYANT and Edward M. Mazze, Trustee, Plaintiffs,**

v.

**Richard H. WOODLAND and Reginald D. Lundy, Defendants.**

Misc. No. 89–0682.
Bankruptcy No. 85–02472F.
Adv. No. 88–2254F.

United States District Court,
E.D. Pennsylvania.

Jan. 31, 1990.

Susan DeJarnatt, Community Legal Services, Philadelphia, Pa., for plaintiff/debtor, Glyndon Bryant.

William J. O'Dair, Philadelphia, Pa., for defendant, Richard H. Woodland.

Michael M. Baylson, U.S. Atty. and Virginia R. Powel, Asst. U.S. Atty., Philadelphia, Pa.

Edward Mazze, Furlong, Pa., trustee.

## ORDER

WALDMAN, District Judge.

AND NOW, this 31st day of January, 1990, upon consideration of the Recommendation and Memorandum Opinion of the Honorable Bruce I. Fox, U.S. Bankruptcy Judge, IT IS HEREBY ORDERED that the Recommendation is APPROVED and a default judgment in the amount of $31,636.89 is entered against defendant Reginald D. Lundy.

## MEMORANDUM OPINION

BRUCE I. FOX, Bankruptcy Judge:

On November 23, 1988, the debtor initiated an adversary proceeding against defendants, Richard H. Woodland and Reginald D. Lundy, seeking to avoid a post-petition transfer of real property of the bankruptcy estate. The debtor alleged, *inter alia*, that defendant Lundy violated the debtor's rights secured to her by the Pennsylvania Unfair Trade Practices and Con-

sumer Protection Law, 73 P.S. § 201–1 *et seq.* (hereinafter referred to by its generic abbreviation "UDAP").

While defendant Woodland responded to the complaint, defendant Lundy failed to respond, appear or otherwise defend against the debtor's claims. After hearing the testimony and reviewing the documentary evidence and pleadings, I found that a valid transfer of property had occurred in favor of defendant Woodland and, on July 24, 1989, entered that judgment. *In re Bryant,* 103 B.R. 95 (Bankr.E.D.Pa.1989). With regard to the debtor's UDAP claim against defendant Lundy, I now make a recommendation of default entry and judgment, as provided in Fed.R.Civ.P., Rule 55 (incorporated by Bankr.Rule 7055).[1] *See In re Bryant,* 103 B.R. at 100. The instant and sole remaining issue is the amount of recovery to which the debtor is entitled for "actual damages" caused by defendant Lundy's unlawful conduct under UDAP.

### I.

After hearing the testimony and reviewing the documentary evidence and pleadings, I recommend the following factual findings, pursuant to 28 U.S.C. § 157(c)(1).

1. In 1975, the debtor and her late husband purchased the property at 1612 North 62nd Street, Philadelphia; a mortgage on this property was taken with Fidelity Bank.

2. In June, 1985, having fallen into financial difficulties following the death of her husband, the debtor filed a chapter 13 bankruptcy petition in an effort to save her home from foreclosure.

3. Under the terms of the plan, the debtor was to make current mortgage payments directly to the mortgagee. The debtor made these payments on a regular basis from June, 1985 until the end of that year.

4. In August, 1986, the mortgagee obtained relief from the automatic stay and, most likely, scheduled the debtor's home for a sheriff sale.

5. In February, 1987, several persons (including lawyers) contacted the debtor by mail, offering to help the debtor stop the impending foreclosure. Among the letters she received was one from defendant Lundy, whom the debtor called for assistance.

6. Defendant Lundy, a real estate agent, advised the debtor that she could avoid the foreclosure sale by selling her house to him; he would rent it back to her, with an option to buy after a number of years. An "Agreement of Sale of Real Estate," signed by the debtor and Lundy and dated February 4, 1987, called for defendant Lundy to purchase the debtor's home for $100.00, subject to the outstanding mortgage of $13,210.00, and subject to an option for the debtor to repurchase 50% of the property back from Lundy under a "co-tenancy agreement."

7. The debtor did not realize that under the February 4, 1987 agreement she was entitled to repurchase only one-half of her former interest. The debtor believed that she was to pay defendant Lundy $271.00 per month, and that thereafter she would be able to obtain full ownership of her home.

8. In April, 1987, defendant Lundy unilaterally cancelled the February 4, 1987 agreement, telling the debtor that it was necessary for him to sell her property in order to satisfy the mortgage.

9. Defendant Lundy induced the debtor to enter into a new agreement; this agreement called for the sale of the premises to Lundy for the sum of $500.00, settlement to occur on or before June 24, 1987. The agreement stated that the property was being purchased subject to the existing first mortgage. Lundy promised the debtor that he would return her a fair portion of the equity after the sale, which was shown at the hearing on damages to be $11,789.03.

10. In July, 1987, the debtor vacated the premises and moved into a home owned by Lundy at 6034 Cedar Avenue, Philadelphia.

---

1. As I noted in my previous opinion in this matter, the action against defendant Lundy is a non-core proceeding. Therefore, only a recommendation of default and damages may be entered by this court.

The debtor lived on Cedar Avenue for a few months, paying rent to Lundy; because he then evicted her from that address, the debtor moved to her current address in Philadelphia.

11. In July, 1987, Lundy sold the debtor's property on 62nd Street to defendant Woodland for $25,000.00, and paid the debtor $500.00, pursuant to their agreement dated June 24, 1987.

12. The debtor has received no other money from defendant Lundy from the proceeds of the sale of her home.

13. The debtor relied on defendant Lundy to advise her about her legal options, and ultimately to sell her house on her behalf. Instead, Lundy induced the debtor to turn her home over to him without fair requital.

14. The debtor sought the aid of Community Legal Services, Inc. to pursue her claims against defendant Lundy; her attorney expended 13.06 hours in this matter.

15. In August 1988, the debtor converted her chapter 13 bankruptcy to chapter 7. The debtor was granted a discharge on June 8, 1989.

## II.

Based upon these factual findings, I reach the following legal conclusions:

■ 1. This court has jurisdiction to hear this non-core proceeding and to recommend findings of fact and conclusions of law to the district court. 28 U.S.C. § 157(c)(1).[2]

2. The plaintiff/debtor is entitled to default judgment against defendant Lundy, who has failed to plead or otherwise appear and defend the claims made against him under the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201–1 *et seq.* ("UDAP").

3. The actions of defendant Lundy as described above (and discussed more fully below) constitute unfair and deceptive acts and practices in violation of UDAP.

4. The debtor has suffered actual damages to the extent of her lost equity in the real property (minus payment received and a reasonable broker's commission), and certain moving expenses.

5. The UDAP violations entitle the debtor to an award of treble damages, pursuant to 73 P.S. § 201–9.2.

## III.

■ In order to succeed in her claim under UDAP, the debtor must meet three criteria. First, in order to show that this statute addresses the wrongs of which she complains, the debtor must show that a residential real estate transaction (that is, the selling of a residence through a real estate agent) constitutes a "trade" or "commerce" within section 3 of the UDAP, 73 P.S. § 201–3.[3] Second, she must show that the UDAP grants her a private cause of action for injuries sustained from the real estate transaction. 73 P.S. § 201–9.2. Finally, the debtor must demonstrate that the actions of which she complains are either unfair or deceptive and fall within one of the seventeen specific acts enumerated by § 201–2, which are declared unlawful by § 201–3. *See In re Smith,* 866 F.2d 576, 581 (3d Cir.1989).

Preliminarily, I note that the Pennsylvania UDAP statute has consistently been read broadly to serve its remedial purpose of placing the seller and consumer on more equal terms. *E.g., In re Russell,* 72 B.R. 855, 872 (Bankr.E.D.Pa.1987); *Commonwealth v. Monumental Properties, Inc.,* 459 Pa. 450, 458, 329 A.2d 812, 816 (1974). The statute has been applied in a wide variety of contexts to provide a remedy for

---

**2.** The debtor, in her posthearing memorandum, addresses the question of whether I have jurisdiction to hear this controversy, despite the entry of discharge of the debtor's underlying bankruptcy. As the case has not been closed, I do continue to have jurisdiction. *Compare In re Stardust Inn, Inc.,* 70 B.R. 888 (Bankr.E.D.Pa. 1987).

**3.** Section 201–3 states in relevant part:
Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce as defined by subclauses (i) through (xvii) of clause (4) of section 2 of this act ... are hereby declared unlawful.

wrongs to consumers. *See, e.g., In re Clark,* 96 B.R. 569 (Bankr.E.D.Pa.1989) (landlord's breach of implied warranty of habitability actionable); *In re Wernley,* 91 B.R. 702 (Bankr.E.D.Pa.1988) (involving unconscionable charge imposed by check cashing company); *In re Andrews,* 78 B.R. 78 (Bankr.E.D.Pa.1987) (systematic imposition of excessive late charges by mortgage lenders). *See generally In re Smith,* 866 F.2d at 581–82.

■ The purchase of real estate has been held to fall within the purpose of the Pennsylvania UDAP. In *Gabriel v. O'Hara,* 368 Pa.Super. 383, 534 A.2d 488, 491–93 (1987), the court held that a literal or plain reading of the statute required that conclusion, where its operative provision provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce ... are hereby declared unlawful." 73 P.S. § 201–3. "Trade" and "commerce" are defined by § 201–2(3) to include "the advertising, offering for sale, sale or distribution of any ... property, tangible or intangible, *real,* personal or mixed ..." (emphasis added). The court concluded that "[s]ince unfair or deceptive acts or practices in the sale of real property are expressly declared unlawful, there is no [basis to conclude that they are not covered by UDAP]. That sales of real property would be protected by [UDAP] is consonant with its broad remedial purposes." *Id.,* 534 A.2d at 492–493.[4]

Thus, for the above reasons, I easily conclude that the services of a real estate broker, when offered in connection with the sale of residential real estate, fall within the broad purview of the Pennsylvania UDAP.

4. Another basis upon which that court found a real estate transaction to fall within the Pennsylvania UDAP is the fact that the leasing of residential real estate had been held to be within its purview by the state Supreme Court in *Commonwealth v. Monumental Properties.* The court in *Gabriel v. O'Hara* agreed that "if a leasehold of real estate is covered by the Consumer Protection Law, there is no reason why guarantees given in connection with the sale of real estate should not also be covered." *Id.,* 534

■ Secondly, the debtor appears to be a person enabled to bring a private cause of action pursuant to 73 P.S. § 201–9.2(a). This section permits the commencement of an action[5] under this statute by

[a]ny person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful by [UDAP]....

The ability of an individual to bring a private cause of action under UDAP was discussed in *In re Smith,* 866 F.2d at 583. The court stated that this section expresses only two limitations: 1) that the purchase of goods or services must lead to a loss as a result of an unfair or deceptive action or practice; and 2) that the class of litigants may include only those persons who purchase or lease goods or services primarily for consumer use rather than for commercial use. It cannot seriously be disputed that the debtor easily satisfies the latter requirement. Her purchase of Lundy's services—to sell her home—involved a solely consumer interest: her residence. *Accord Gabriel v. O'Hara.*

As to the former criterion, I find it clear that the defendant's actions were unfair to the debtor, deceptive and indeed even fraudulent. The defendant absconded with the balance of the selling price on the home (after, at least, satisfying the mortgage). He succeeded in taking the debtor's home from her possession, obtaining a deed signed in blank from the debtor, *see In re Bryant,* 103 B.R. at 102, and selling the property without returning to her a fair compensation. Lundy retained for himself what should have been the debtor's: her

A.2d at 492, *quoting Anderson v. Kessler,* 32 Pa.D. & C. 3d 623 (Allegh.1984).

5. The action may seek to recover actual damages or $100.00, whichever is greater. This section permits the court, in its discretion, to award "up to three times the actual damages sustained, but not less than one hundred dollars," and to provide "such additional relief as [the court] deems necessary or proper." 73 P.S. § 201–9.2(a).

equity in the real property, built up over ten years, less reasonable compensation for the sale of the property. The defendant misled the debtor on several occasions, causing her to believe that he was acting in her best interests when, in reality, Lundy was scheming to wrest as much as possible from the debtor. He first led her to believe that, under their first agreement, she would be able to eventually repurchase the property from Lundy, whereas the agreement gave her only the possibility of repurchasing a one-half interest in the property. He later told the debtor he would have to sell her home to prevent a foreclosure sale, presumably meaning that he could obtain for her more through a private sales transaction than a sheriff sale would obtain. She was persuaded to sell her home, using Lundy's services, on his representations that he would return to her a significant portion of the equity she owned in the property. This was never done. These acts were indubitably unfair to and unquestionably deceptive of the debtor. Lundy's representations and deceptive actions helped realize his apparent plan: to defraud the debtor of virtually all of her interest in her residence. *See generally In re Rubin*, 875 F.2d 755 (9th Cir.1989) (state court judgment debt for fraud not dischargeable, where debtor, a real estate agent, falsely told clients, *inter alia*, he would help them repurchase their home). Certainly the debtor's loss of equity is a direct result of the defendant's actions.

Finally, the debtor's successful UDAP claim depends upon a nexus between the statute and the unfair and deceptive actions: whether the acts complained of fall within one of the seventeen specific enumerations of § 201–2, which are those declared unlawful by § 201–3. *See In re Smith*, 866 F.2d at 583.

The only subclause relevant to the case at bar is the catch-all provision, which makes it unlawful to "engag[e] in any other fraudulent conduct which creates a likelihood of confusion or of misunderstanding." 73 P.S. § 201–2(4)(xvii). This subclause bans only conduct that rises to the level of fraud; thus, to determine whether Lundy violated this provision I must measure his conduct "against the elements of common law fraud, which require that a party make a material misrepresentation that another reasonably relies upon to his or her detriment." *In re Smith*, 866 F.2d at 583.

As alluded to above, I do conclude that Lundy's actions were fraudulent *vis-a-vis* the debtor. Lundy held himself out as a professional real estate agent, capable of assisting the debtor in achieving her initial goal of saving her home from foreclosure or the loss of all of her equity. The debtor trusted Lundy's representation that she would be able to sell her house to him, rent from him, and eventually repurchase the home. Instead, she then was able to buy back only a one-half interest (which she apparently did not understand as a term of their written agreement). Having placed her trust in Lundy, she later believed him when he said it was necessary to sell the house to a third party. The debtor trusted Lundy's professionalism, believing that he would indeed sell her house on her behalf, and return to her a significant portion of the proceeds. I note that a person selling residential real estate through an agent "may reasonably expect that he or she will receive fair and above-board treatment in their dealings and that no undue advantage will be taken" by the agent. *In re Smith*, 866 F.2d at 584. Lundy's fraudulent conduct caused misunderstanding on the debtor's part, and confusion. *See In re Rubin.* I thus conclude that Lundy did violate § 201–2(4)(xvii), and that damages under the UDAP may be awarded.

### IV.

Recovery under 73 P.S. § 201–9.2(a) is expressly limited to "actual damages." This provision has been interpreted as providing a penalty that is to be meted liberally, and is to include reasonable consequential damages. *In re Jungkurth*, 74 B.R. 323, 336 (Bankr.E.D.Pa.1987), *aff'd*, 87 B.R. 333 (E.D.Pa.1988).

The debtor alleges that defendant Lundy's conduct caused her to be "deeply upset." Recovery for emotional distress is

not permitted under the Pennsylvania UDAP, as it does not fall within the express limitations of the statute which recognizes as actual damages "any ascertainable loss of money or property...." 73 P.S. § 201–9.2. *See In re Clark*, 96 B.R. 569, 583 (Bankr.E.D.Pa.1989). I must deny, then, any damages sought on this basis. Also, the debtor has requested damages to the extent that her current monthly rent exceeds her former mortgage payment. As I held in *In re Bryant*, it was the debtor's intent to sell her house and so I find it inappropriate to award these requested damages.

■ To the extent the debtor showed that she was damaged by the loss of equity, I agree that that is an ascertainable loss which is compensable. Based upon testimony presented at the hearing on damages, I agree with the debtor that the equity in her home at the time of its sale to defendant Woodland was in the amount of $11,789.03. Her actual damages include, then, that amount, minus the $500.00 received from Lundy, less a reasonable broker's commission. I also find that the debtor suffered damages for moving expenses in the amount of $162.50. That is, the debtor was forced to move twice; one of these two moves was made necessary by Lundy, when he evicted her from the property she was renting from him on Cedar Avenue. The amount spent on each of the two relocations was not shown; instead, the debtor states that $325.00 was spent in both moves. I therefore find that the debtor was damaged to the extent that she was forced to relocate one additional time, and therefore award her damages of one-half the amount requested.

■ The imposition of treble damages is discretionary under the statute. Where, as here, I find defendant Lundy's conduct to be unconscionable, and in direct violation of a contractual obligation between the parties, I find that such an award is appropriate and shall so recommend. *See In re Andrews*, 78 B.R. at 84–85; *In re Russell*, 72 B.R. at 870–72. *Compare In re Wernley*, 91 B.R. at 705. I see no equities in the defendant's favor to make such trebling of

damages inappropriate. *In re Russell*, 72 B.R. at 872. I recommend, then, that damages are to be assessed in the amount of $29,854.59, which represents three times the actual damages of $9,951.53, based upon lost equity ($11,789.03) and moving expenses ($162.50), less the amount she did receive from the defendant ($500.00) and less a reasonable broker's commission representing 6% of the purchase price ($1,500.00).

■ Finally, attorney fees are recoverable under Pennsylvania UDAP, as the court "may provide such additional relief as it deems necessary or proper." 73 P.S. § 201–9.2(a). *See In re Andrews*, 78 B.R. 78 (Bankr.E.D.Pa.1987); *In re Jungkurth*, 74 B.R. at 336. Thus, as I find the defendant's conduct to be so unfair and in violation of the parties' agreements, I shall recommend that defendant Lundy pay reasonable counsel fees to the debtor. *In re Wernley*, 91 B.R. at 705.

■ The debtor's counsel submitted an adequately detailed schedule of time expended on issues in this litigation, as well as a summary of legal experience, which I shall use in determining the recommended reasonable value of the services rendered. *In re Szostek*, 93 B.R. 399, 408 (Bankr.E.D. Pa.1988). This value, called the "lodestar" amount, is calculated by multiplying the hourly rate of compensation of the attorney by the number of hours of work reasonably spent on the matter for which fees should be awarded. *Lindy Bros. Builders, Inc. v. American Radiator and Standard Sanitary Corp.*, 487 F.2d 161 (3d Cir.1973); *Lindy Bros. Builders, Inc. v. American Radiator and Standard Sanitary Corp.*, 540 F.2d 102 (3d Cir.1976), and their progeny. I note that in statutory fee-shifting matters such as the instant one, the time spent pursuing a fee request, including time spent in preparing the fee petition, is compensable. *E.g., Pawlak v. Greenawalt*, 713 F.2d 972 (3d Cir.1983), *cert. denied*, 464 U.S. 1042, 104 S.Ct. 707, 79 L.Ed.2d 172 (1984). Finally, the Third Circuit has held that legal services attorneys, who are employed by an organization that provides assistance at no cost, should be awarded

fees equal to those awarded to members of the private bar having similar expertise and experience. *Rodriguez v. Taylor*, 569 F.2d 1231 (3d Cir.1977), *cert. denied*, 436 U.S. 913, 98 S.Ct. 2254, 56 L.Ed.2d 414 (1978).

The debtor's hourly rates for the years 1987, 1988 and 1989 ($110.00,[6] $120.00 and $140.00 respectively), given her nine years of experience as a practicing attorney, conform to the rates set by the Community Legal Services Board of Trustees, which set rates for their attorneys based upon surveys of rates earned by law practitioners and firms. *In re Szostek*, 93 B.R. at 409. The time counsel expended on the litigation principally involved issues concerning defendant Woodland, for which she may not be recompensed. I agree with counsel, then, that a fair division of the time spent on issues involving both defendants is to allocate 25% of that time as time spent litigating against defendant Lundy. *See In re Paolino*, 71 B.R. 576, 581 (Bankr. E.D.Pa.1987). In total, counsel spent, in 1987, .35 hours on litigating against Lundy, thereby earning fees of $38.50. In 1988 she appeared to expend 2.75 hours, but only requests 1.78 hours of compensation for a total of $213.60. In 1989 the attorney reports expending 10.93 hours against Lundy in litigation (although by my estimate, it appears to be slightly more), for an amount of $1,530.20, or a total of $1,782.30.

An appropriate recommendation shall be issued.

### RECOMMENDATION

AND NOW, this 15th day of November, 1989, for the reasons stated in the accompanying memorandum opinion, it is hereby RECOMMENDED that the District Court enter default judgment against defendant Reginald D. Lundy, and award the plaintiffs damages in the amount of $29,854.59, and attorneys fees in the amount of $1,782.30. The Chief Deputy Clerk in Charge of Bankruptcy Operations is directed to transmit this recommendation together with the accompanying Memorandum Opinion to the Clerk of the District Court.

---

6. Page two of the debtor's counsel's Schedule of Time Expended mistakenly listed her 1987 hour- ly rate at $111.00.