(241 P.3d 1027)
No. 103,533

WELLS FARGO BANK, N.A., *et al.*, *Appellees*, v. PHYLLIS M. EASTHAM, *et al.*, *Appellants*.

—

Opinion filed November 19, 2010.

*Richard D. Dvorak*, of Tomes & Dvorak, Chartered, of Overland Park, for appellants.

*Jennifer A. Donnelli* and *Thomas E. Nanney*, of Bryan Cave LLP, of Kansas City, Missouri, for appellees.

Before MALONE, P.J., CAPLINGER and LEBEN, JJ.

LEBEN, J.: A few months after purchasing their home, Jason and Phyllis Eastham stopped making their monthly mortgage payments, and Wells Fargo, which had obtained rights to their loan and mortgage by assignment, received a foreclosure judgment against them. The Easthams filed a counterclaim against Wells Fargo seeking to hold Wells Fargo liable for their initial lender's failure to comply with the Truth in Lending Act's disclosure requirements. The district court granted summary judgment in Wells Fargo's favor, and the Easthams have appealed.

But even though the Eastham's initial creditor did violate the Truth in Lending Act's disclosure requirements, another party who later receives the initial lender's rights by assignment is not liable for such violations unless they are apparent upon facial examination of a required document called the disclosure statement. Here, the

initial creditor violated a timing requirement: it didn't give the Easthams the disclosure statement when it was supposed to. But a timing violation does not fall within the situations that Congress has deemed to be facially apparent violations—incorrect or incomplete disclosures or disclosures that don't use the required terms or format—so Wells Fargo is not liable for the violation.

## FACTUAL AND PROCEDURAL BACKGROUND

Jason Eastham borrowed $228,000 from Intervale Mortgage Corporation to buy the house that he and his wife, Phyllis Eastham, had been renting. The Easthams signed a mortgage on the property as collateral for the loan. Jason was negotiating interest rates until the day of closing. At closing, held July 5, 2005, Jason signed a new loan application with an interest rate that was higher than he had expected so that he could close that day, which the seller demanded. The loan application included a Truth in Lending Act disclosure statement that both he and Phyllis then signed. Shortly after that, the Easthams signed the mortgage documents.

In October 2005, Jason was hospitalized for a ruptured benign brain tumor; he suffered a stroke after the surgery that removed the tumor. Soon after that, the Easthams stopped paying their monthly mortgage payments, and the mortgage went into default.

By then, the loan and mortgage had been assigned to Wells Fargo. Wells Fargo petitioned for foreclosure in April 2006. The Easthams answered and filed a counterclaim against Wells Fargo, but the district court entered a judgment of foreclosure against Jason; the court directed that the counterclaim's allegations proceed to trial.

The counterclaim alleged that Wells Fargo, as Intervale's assignee, engaged in predatory lending practices and didn't comply with provisions of the Federal Trade Commission Act, the Truth in Lending Act, the Equal Credit Opportunity Act, and the Fair Credit Reporting Act. During pretrial discussions, the Easthams refined their counterclaim into three main contentions: (1) that Wells Fargo is liable for Intervale's failure to give them the required Truth in Lending Act disclosures sooner than minutes before closing; (2) that they were forced into the loan and mortgage

by the seller's threats that they wouldn't get the property since he was being foreclosed on; and (3) that they're entitled to rescind the mortgage because Intervale did not give them the proper notice of their right to rescind within 3 days.

After the claims were refined, Wells Fargo moved for summary judgment. The district court granted the motion, concluding that Wells Fargo could not be liable as an assignee for Intervale's alleged Truth in Lending Act disclosure violations; that Wells Fargo could not be liable for the seller's alleged duress to get the Easthams to buy the property; and that the Easthams waived their right to seek rescission under the Truth in Lending Act because they brought their rescission claim more than 3 years after closing. The district court granted the summary judgment motion.

The Easthams appeal and insist that genuine issues of material fact exist to preclude summary judgment on the alleged violation of the Truth in Lending Act's disclosure requirements. The Eastham's brief on appeal does not argue the other bases presented to the district court in support of the counterclaim, so those issues have been waived. See *Kingsley v. Kansas Dept. of Revenue*, 288 Kan. 390, 395, 204 P.3d 562 (2009) (issues not briefed are waived). Our review is thus limited to the appropriateness of summary judgment on the Easthams' claim that Wells Fargo can be held liable for Truth in Lending Act violations of the original lender, Intervale Mortgage Corp.

### STANDARD OF REVIEW
### AND ADMITTED FACTS ON APPEAL

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits show that no genuine issue as to any material fact exists and that the moving party is entitled to judgment as a matter of law. *Miller v. Westport Ins. Corp.*, 288 Kan. 27, 32, 200 P.3d 419 (2009). Although the Easthams contend that factual disputes do exist, the facts relevant to the legal issue before us—and determinative of this appeal—are undisputed. Wells Fargo asserted in the district court, based on the Easthams' own testimony, that the Easthams received and signed the Truth in Lending Act disclosure statement

at closing. The Easthams presented no contrary evidence, and the district court properly found those facts uncontroverted. Neither party disputes the content of the disclosure document. Because there are no disputed facts that are important to the legal issue before us, we review the grant of summary judgment without any required deference to the district court. See *Smith v. Kansas Gas Service Co.*, 285 Kan. 33, 39, 169 P.3d 1052 (2007); *Davis v. Allstate Insurance Co.*, 36 Kan. App. 2d 717, 720, 143 P.3d 413 (2006).

In this case, Wells Fargo is entitled to judgment as a matter of law unless Intervale violated TILA's disclosure requirements and Wells Fargo is liable for Intervale's actions as the assignee of the mortgage. We reference the statutory provisions as they existed when the Easthams closed on their home in July 2005. While some statutory changes have been made since that time regarding the timing of disclosures, no changes have been made that relate to whether the failure to comply with the timing rules would be apparent on the face of the disclosure statement.

## ANALYSIS

The Truth in Lending Act requires that the "creditor" make certain disclosures to the debtor in a covered transaction, 15 U.S.C. § 1631(a) (2006), but these requirements only apply to the initial lender, not a party to whom the creditor's rights are later assigned, a party called the assignee. The Truth in Lending Act specifically provides that the "creditor," which has these disclosure duties, is limited to the person or entity "to whom the debt arising from the consumer credit transaction *is initially payable on the face of the indebtedness.*" (Emphasis added.) 15 U.S.C. § 1602(f) (2006).

The Act has a separate provision providing liability for an assignee. So long as the assignment occurs through a voluntary transaction, the assignee has liability only for violations that are "apparent on the face of the disclosure statement." 15 U.S.C. §§ 1641(a), (e)(1)(A) (2006). Our case turns, then, on whether any Truth in Lending Act violation was apparent on the face of the disclosure statement given to the Easthams at closing.

The Easthams contend that it should have been apparent to Wells Fargo that the disclosure statement wasn't given to the East-

hams 3 days before closing; without citation to any statutory provisions, the Easthams contend that the Act required that the disclosure statement be given to the Easthams at least 3 days before closing. Since the disclosure statement was dated the same day as the loan agreement and mortgage, the Easthams contend that it was obvious from the face of the document that the lender had violated its disclosure requirements.

The Easthams' argument breaks down when we review the statutory provisions because there is no requirement *in all cases* that the final disclosure document be given to the borrower 3 days before closing. If the requirement doesn't exist in all cases, then a violation wouldn't be apparent even if the face of the disclosure document suggested that there *might* be a violation: an assignee has no "duty to seek out additional information before it makes its own decision . . . to accept the assignment with the protection afforded by § 1641(a)." *Taylor v. Quality Hyundai, Inc.*, 150 F.3d 689, 694 (7th Cir. 1998). This is because Congress has plainly determined through the statutory language that the violation must be "apparent on the face of the disclosure statement" itself, not something disclosed only by information determined from the face of the document *plus* investigation. See *Taylor*, 150 F.3d at 694-95.

Congress has made this quite clear by defining what is "apparent on the face of the disclosure statement." For consumer credit transactions secured by a home mortgage, "a violation is apparent on the face of the disclosure statement" only if "the disclosure can be determined to be incomplete or inaccurate by a comparison among the disclosure statement, any itemization of the amount financed, the note, or any other disclosure of disbursement" or "the disclosure statement does not use the terms or format required to be used by" the Truth in Lending Act. 15 U.S.C. § 1641(e)(2). The Easthams have not suggested that the disclosure could be determined inaccurate merely by comparison to other documents; nor have they suggested that the document failed to comply with legal requirements for its terms or format.

Instead, the Easthams' claim is premised on their assertion that the original lender had to provide the disclosure statement at least 3 days before the transaction closed. But that's not a requirement

in all transactions covered by the Truth in Lending Act. The disclosures must be made before the credit is extended and where, as here, the loan is secured by the debtor's residence, the creditor must also give the debtor good-faith estimates of the disclosures no later than 3 days after receipt of the credit application. 15 U.S.C. §§ 1638(b)(1), (b)(2) (2000). The final disclosures must be given when the transaction occurs. 15 U.S.C. § 1638(b)(2). A further disclosure requirement kicks in no later than 3 days before the transaction *only if* the interest rate set out in the good-faith estimate is no longer accurate. 15 U.S.C. § 1638(b); Regulation Z, 12 C.F.R. 226.19(a)(2)(ii) (2005). This is presumably the requirement the Easthams are referring to, although they have not provided a citation to such a requirement in their appellate briefs.

Wells Fargo had no way to know from the face of the disclosure statement or any other documents referenced in 15 U.S.C. § 1641(e)(2) whether the interest rate in the final disclosure document differed from what had been provided in the good-faith estimate. That knowledge could only come through investigation of facts beyond what Congress has defined as those that are apparent on the face of the disclosure statement. Without that knowledge, Wells Fargo had no reason to know that the original lender may have violated the Truth in Lending Act by providing the disclosure statement on the same day as the transaction closing. Accordingly, Wells Fargo, as the assignee, has no liability for such a violation. See *Crowe v. Joliet Dodge*, 2001 WL 811655, at *5 (N.D. Ill. 2001) (unpublished opinion) (assignee is not liable for potential violation regarding timing of the furnishing of disclosure statement because such a violation is not apparent on the face of the disclosure statement).

The Easthams cite one other part of the Truth in Lending Act, 15 U.S.C. § 1641(d), which they claim subjects an assignee to any claim that could have been brought against the creditor. The Easthams fail to note that this liability is limited and applies only to "a mortgage referred to in section 1602(aa)" of the Act. Those are high-interest-rate mortgages in which "the annual percentage rate at the consummation of the transaction will exceed by more than 10 percentage points the yield on Treasury securities having com-

parable periods of maturity" or in which total "points and fees payable by the consumer at or before closing" exceed specified limits. 15 U.S.C. § 1602(aa)(1). The Easthams have not presented any factual basis to suggest that this is a high-interest-rate mortgage covered by section 1602(aa), which leaves the general rule for assignee liability—in which there is no liability for the initial lender's violations unless they are apparent on the face of the disclosure statement.

The judgment of the district court is therefore affirmed.