CORRECTED OPINION

NOT DESIGNATED FOR PUBLICATION

Nos. 114,849
115,246

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

QUEEN'S PARK OVAL ASSET HOLDING TRUST,
*Appellee*,

v.

JASON & CARRIE BELVEAL,
*Appellants*.

MEMORANDUM OPINION

Appeal from Jefferson District Court; JANICE D. RUSSELL, judge. Opinion filed May 12, 2017. Affirmed.

*Donna L. Huffman*, of The Law Office of Donna L. Huffman, of Oskaloosa, for appellants.

*Jonathan Laurans*, of Kansas City, Missouri, and *A. Michelle Canter*, of Bradley Arant Boult Cummings LLP, of Norcross, Georgia, for appellee Flagstar Bank, FSB.

*Aaron M. Schuckman*, of Millsap & Singer, LLC, of St. Louis, Missouri, for appellee Queen's Park Oval Asset Holding Trust.

Before ARNOLD-BURGER, C.J., BUSER and POWELL, JJ.

*Per Curiam*: Jason and Carrie Belveal appeal the district court's entry of judgment against them. The Belveals fell behind on their monthly mortgage payments and eventually defaulted on both their note and mortgage. Flagstar Bank, which at that time

1

was the holder of the note and assignee of the mortgage, filed a petition for foreclosure. After the default judgment initially entered against them was set aside, the Belveals filed an answer and counterclaims against Flagstar. Queen's Park Oval Asset Holding Trust (Queen's Park) was substituted as plaintiff when it obtained Flagstar's interest in both the note and mortgage. Ultimately, the district court entered judgment on the pleadings in favor of Flagstar as counterdefendant, granted summary judgment in favor of Queen's Park, and imposed sanctions against the Belveals' attorney. Because the record shows no reversible error on the part of the district court, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

In late 2009, Jason executed a promissory note to 1st Alliance Mortgage for $126,170, plus interest. The Belveals secured the note with a mortgage which they executed to Mortgage Electronic Registration Systems, Inc. (MERS), acting as nominee for 1st Alliance Mortgage. The Belveals pledged real estate commonly known as 304 Walnut Street, Valley Falls, Kansas, as collateral for the debt. 1st Alliance Mortgage endorsed the note to Flagstar, and MERS assigned the mortgage to Flagstar.

In November 2011, the Belveals fell behind on their payments, and by July 2012, they had permanently defaulted on both the note and the mortgage. The Belveals were notified that their payments were past due and then that they were in default. In November 2012, Flagstar filed a petition for foreclosure, seeking an in personam judgment against Jason and an in rem judgment against Carrie. The summons was served through residential tacking and mailing. The Belveals failed to file any responsive pleadings, and the district court entered a default judgment in Flagstar's favor and issued an order of sale.

In May 2013, the Belveals moved to set aside the default judgment and stay the judgment's execution, which the district court granted after a hearing. The Belveals then filed their answer and asserted counterclaims against Flagstar.

After it filed the petition for foreclosure, Flagstar endorsed the note and assigned the mortgage to the Secretary of Housing and Urban Development (HUD). HUD then executed an allonge ("[a] slip of paper sometimes attached to a negotiable instrument for the purpose of receiving further indorsements when the original paper is filled with indorsements," Black's Law Dictionary 92 [10th ed. 2014]) affixed to the note, endorsing the note and assigning the mortgage to Queen's Park. In December 2013, Flagstar filed a motion to substitute Queen's Park as plaintiff in the case, with Flagstar remaining the counterdefendant. The district court issued an order granting substitution on December 26, 2013, but for some reason, a hearing on the substitution motion was then held in March 2014, at which the district court allowed Queen's Park to substitute for Flagstar as plaintiff.

Flagstar first answered the Belveals' counterpetition in November 2013, and then Flagstar filed a motion for judgment on the pleadings. Flagstar argued that even if the counterclaims' factual allegations were accepted as true, the Belveals failed to state a claim. The Belveals opposed Flagstar's motion, and a hearing was held. In a memorandum opinion, the district court granted Flagstar's motion and dismissed the Belveals' counterclaims, finding that the Belveals had failed to state a claim upon which relief could be granted.

At some point after the substitution, Queen's Park presented the Belveals with an offer to modify their mortgage loan, which they rejected. Then, after the district court granted Flagstar's motion for judgment on the pleadings, the Belveals filed a motion to file a third-party petition against Flagstar. They also filed a motion to amend their counterpetition to assert claims against Roundpoint Mortgage Servicing Corporation

3

(Roundpoint), Queen's Park's loan servicer, and to interplead Queen's Park, but they later amended the motion, requesting to assert claims against Queen's Park and to interplead Roundpoint. Queen's Park responded by arguing that the Belveals' claims were not actionable. At the hearing on the motions, the district court orally ruled that the Belveals could not file a third-party petition against Flagstar and could not amend their counterpetition to assert claims against Queen's Park and interplead Roundpoint.

Following the close of discovery, Queen's Park moved for summary judgment. The Belveals filed a brief in opposition and, along with several other attachments, attached two affidavits executed by their attorney. Believing that the affidavits were submitted in bad faith, Queen's Park filed a motion to strike and asked the district court to impose sanctions against the Belveals' attorney. Before the district court ruled on Queen's Park's motion for summary judgment, the Belveals informed the district court that their divorce had been finalized and argued that the district court no longer had jurisdiction to enter a judgment against Carrie because the divorce decree terminated Carrie's marital interest in the property.

After conducting a hearing on Queen's Park's motion, the district court, in another memorandum opinion, granted summary judgment in favor of Queen's Park, ordered foreclosure of the Belveals' mortgage, and entered an in personam judgment against Jason and an in rem judgment against Carrie. A separate hearing was held on Queen's Park's motion for sanctions, and, in its final memorandum opinion, the district court imposed sanctions against the Belveals' attorney.

The Belveals timely appeal.

DID THE DISTRICT COURT ERR IN GRANTING
FLAGSTAR'S MOTION FOR JUDGMENT ON THE PLEADINGS?

"A motion for judgment on the pleadings is based upon the ground that the moving party is entitled to a judgment on the face of the pleadings themselves." *Koss Construction v. Caterpillar, Inc.*, 25 Kan. App. 2d 200, 200, 960 P.2d 255, *rev. denied* 265 Kan. 885 (1998). In filing a motion for judgment on the pleadings, the movant admits to all the factual allegations in the opposing party's pleadings. *Clear Water Truck Co., Inc. v. M. Bruenger & Co., Inc.*, 214 Kan. 139, 140, 519 P.2d 682 (1974). The district court, when ruling on the motion, accepts as true the factual allegations in the nonmoving party's pleadings and determines whether, based on the alleged facts, a valid claim exists. *Purvis v. Williams*, 276 Kan. 182, 186-87, 73 P.3d 740 (2003).

A motion for judgment on the pleadings under K.S.A. 2016 Supp. 60-212(c) and a motion to dismiss for failure to state a claim under K.S.A. 2016 Supp. 60-212(b)(6) are governed by the same standard. Dismissal is permissible "only if the facts alleged or admitted in the pleadings demonstrate no theory of relief for the plaintiff or an insuperable legal bar to relief . . . requir[ing] the district court to liberally construe the allegations in favor of the [nonmoving party] and preclud[ing] review of any external evidentiary sources." *Purdum v. Purdum*, 48 Kan. App. 2d 938, 994-95, 301 P.3d 718 (2013) (Atcheson, J., dissenting). Our review of a district court's ruling on a motion for judgment on the pleadings is unlimited. *Wagner v. State*, 46 Kan. App. 2d 858, 860, 265 P.3d 577 (2011), *rev. denied* 294 Kan. 948 (2012). And to the extent necessary, statutory interpretation is also subject to this court's unlimited review. *Neighbor v. Westar Energy, Inc.*, 301 Kan. 916, 918, 349 P.3d 469 (2015).

The Belveals appear to make four arguments in support of their claim that the district court erred by granting Flagstar's motion for judgment. We address each in turn.

5

A.    *Premature Motion*

The Belveals first argue that Flagstar's motion was premature because a new party had entered the case. Under K.S.A. 2016 Supp. 60-212(c), a motion for judgment on the pleadings may be filed after the pleadings are closed. Generally, "[p]leadings are not closed until an answer is filed unless a counterclaim, cross-claim, or third-party claim is filed, in which event this filing of a reply or answer to the [respective] claim will normally mark the close of pleadings. [Citations omitted.]" *Simmon v. Bond*, 6 Kan. App. 2d 766, 768, 634 P.2d 1148 (1981).

Flagstar's petition to foreclose the Belveals' mortgage was filed on November 8, 2012. After the court granted their motion to set aside the default judgment, the Belveals filed their answer and counterclaims on November 13, 2013. Flagstar filed its answer to the Belveals' counterclaims on November 25, 2013, and filed its motion for judgment on the pleadings on April 7, 2014. Because Flagstar had filed an answer to the Belveals' counterclaims, the pleadings were closed when Flagstar filed its motion for judgment on the pleadings. Also, because Queen's Park was substituted as plaintiff, it did not need to file any pleadings because Flagstar remained the counterdefendant.

The Belveals also argue the district court erred in granting Flagstar's motion before discovery had been completed. What the Belveals fail to recognize, however, is that discovery does not need to be completed in order for the district court to rule on a motion for judgment on the pleadings. As mentioned, in filing a motion for judgment on the pleadings, the movant admits to all the factual allegations in the opposing party's pleadings. *Clear Water Truck Co., Inc.*, 214 Kan. at 140. And the district court accepts those allegations as true. *Purvis*, 276 Kan. at 186-87. It was, therefore, permissible for the district court to rule on Flagstar's motion even though the parties had not finished discovery.

B.      *Kansas Consumer Protection Act Claims*


The Belveals next argue that Flagstar violated the Kansas Consumer Protection
Act (KCPA), K.S.A. 50-623 *et seq*. K.S.A. 2016 Supp. 50-626(a) states: "No supplier
shall engage in any deceptive act or practice in connection with a consumer transaction."
K.S.A. 50-627(a) states, in part: "No supplier shall engage in any unconscionable act or
practice in connection with a consumer transaction." A "'[c]onsumer transaction'" is
defined as "a sale, lease, assignment or other disposition for value of property or services
within this state (except insurance contracts regulated under state law) to a consumer; or a
solicitation by a supplier with respect to any of these dispositions." K.S.A. 2016 Supp.
50-624(c). A bank's grant of a home loan mortgage to an individual is a consumer
transaction under the KCPA. *State ex rel. Stephan v. Brotherhood Bank and Trust Co.*, 8
Kan. App. 2d 57, Syl. ¶ 1, 649 P.2d 419, *rev. denied* 232 Kan. 876 (1982); see K.S.A.
2016 Supp. 50-624(c). Kansas courts are to liberally construe the KCPA in favor of the
consumer. *Brotherhood Bank and Trust Co.*, 8 Kan. App. 2d at 60.


In their counterpetition, the Belveals alleged that Flagstar engaged in deceptive
and unconscionable acts before and during the foreclosure of the mortgage, actions that
are forbidden in a consumer transaction. See K.S.A. 2016 Supp. 50-626(a); K.S.A. 50-
627(a). While a bank's grant of a home loan mortgage to an individual is a consumer
transaction, Flagstar did not grant the Belveals a mortgage. In fact, the alleged KCPA
violations occurred after the original lender granted the mortgage to the Belveals. The
Belveals' counterpetition also did not include any allegation that Flagstar sold, leased, or
assigned property or services to the Belveals. See K.S.A. 2016 Supp. 50-624(c). Flagstar
and the Belveals were not involved in a consumer transaction.


In their brief, the Belveals argue that the grant of a loan and loan servicing are
consumer transactions under the KCPA. They first cite *Schneider v. CitiBank, NA*, No.
13-4094-SAC, 2014 WL 219339, at *8 (D. Kan. 2014) (unpublished opinion), where the

7

court determined that the subject of the plaintiffs' claims involved a consumer transaction because the defendants had previously granted the plaintiffs a home mortgage loan. They also cite *Brotherhood Bank and Trust Co.*, noting that the grant of a home mortgage loan is a consumer transaction. The problem for the Belveals is that 1st Allliance Mortgage granted their home mortgage loan, not Flagstar. Finally, the Belveals cite *Via Christi Regional Med. Center, Inc. v. Reed*, 298 Kan. 503, 314 P.3d 852 (2013), but they do not specifically explain how it applies here. *Reed* is, in fact, unhelpful because whether a consumer transaction had occurred was undisputed. 298 Kan. at 519.

In their reply brief, the Belveals cite *Sanchez v. Bank of America, N.A.*, No. 6:14-CV-1142-JTM-TJJ, 2014 WL 5800203 (D. Kan. 2014) (unpublished opinion), as support for their contention that loan servicing is a consumer transaction under the KCPA. Relying on other federal district court cases, the *Sanchez* court determined that "financial communications" about mortgage modification are consumer transactions. 2014 WL 5800203, at *3-5. But here, although their counterpetition is difficult to discern, it does not appear the Belveals' KCPA claims stem from their attempts to modify or refinance their mortgage. Rather, it seems the Belveals claim that Flagstar misrepresented that it owned and had the ability to foreclose on their mortgage. Because Flagstar did not grant a mortgage to the Belveals and the allegations in the Belveals' counterpetition only concern Flagstar's purchase and foreclosure of their mortgage, no consumer transaction occurred.

Moreover, even if they were involved in a consumer transaction with Flagstar, the Belveals must overcome another "insuperable legal bar to relief." See *Purdum*, 48 Kan. App. 2d at 994. The KCPA allows a consumer who has been aggrieved by a violation of the act to seek civil damages. K.S.A. 50-634(b). The requirement that the party be aggrieved is mandatory. *Finstad v. Washburn University*, 252 Kan. 465, 472, 845 P.2d 685 (1993) (stating plaintiffs could not recover damages under K.S.A. 50-634[b] unless they were aggrieved). An aggrieved consumer is not someone "who is neither aware of nor damaged by a violation of the [KCPA]." 252 Kan. at 473. To bring an action under

K.S.A. 50-634(b), a "causal connection" between the KCPA violation and the plaintiff's alleged damage must exist. 252 Kan. at 474; see *Schneider v. Liberty Asset Management*, 45 Kan. App. 2d 978, 985, 251 P.3d 666 (2011), *rev. denied* 298 Kan. 1203 (2013).

The Belveals did not sufficiently allege in their counterpetition that they were aggrieved by the alleged KCPA violations. Specifically, the Belveals failed to show a causal connection between Flagstar's alleged KCPA violations and their damages; they merely alleged that they were aggrieved. Presumably, they were aggrieved because foreclosure proceedings had been initiated. The Belveals' allegations of KCPA violations, however, all seem to have occurred after they defaulted on their mortgage and foreclosure proceedings had begun.

On appeal, the Belveals simply argue that they were not required to show any connection between the alleged acts and their injuries. They cite *Unruh v. Purina Mills*, 289 Kan. 1185, 1191, 221 P.3d 1130 (2009), noting the district court's statement of the KCPA issue in a pretrial order. However, the issue in *Unruh* was whether, based on the pretrial order, the KCPA claims were properly submitted to the jury. There is no discussion in *Unruh* that the plaintiff must be an aggrieved consumer. The Belveals, in their reply brief, continue to argue that the KCPA did not require them to show a connection between the violations and their harm, ignoring the holdings of *Finstad* and *Schneider*. They instead make arguments based on the language of K.S.A. 2016 Supp. 50-626 and K.S.A. 50-634 that do not seem relevant to the issue. Despite their contention, the Belveals must have been aggrieved to bring a claim under the KCPA and must show the connection between the violation and their harm. See *Finstad*, 252 Kan. at 472-74.

Finally, even if the Belveals were involved in a consumer transaction with Flagstar and had sufficiently shown injury, they still failed to state valid KCPA claims. After the district court found that a consumer transaction did not occur and the Belveals failed to

show that they were aggrieved, the court addressed the substance of the Belveals' deceptive acts and unconscionability claims and determined that the facts alleged by the Belveals did not constitute deceptive or unconscionable acts. On appeal, the Belveals argue that the district court erred in finding that they had not shown Flagstar acted unconscionably based on their failure to show reliance as K.S.A. 50-627(b)(6) requires and that the statute does not include a reliance element. K.S.A. 50-627(b)(6) states, however, that an unconscionable act includes "the supplier made a misleading statement of opinion on which the consumer was likely to rely to the consumer's detriment." It seems clear from the statute's plain language that the Belveals were required to show that they relied or were likely to rely on Flagstar's alleged misrepresentations. Because they did not brief them, the Belveals waived any issues concerning the district court's other findings about the validity of their alleged KCPA claims. See *Superior Boiler Works, Inc. v. Kimball*, 292 Kan. 885, 889, 259 P.3d 676 (2011).

C.      *Negligence*

The Belveals also argue that Flagstar was negligent. The elements of a negligence claim are well known. To prove negligence in Kansas, a plaintiff must show "'the existence of a duty, breach of that duty, injury, and a causal connection between the duty breached and the injury suffered. Whether a duty exists is a question of law.'" *Reynolds v. Kansas Dept. of Transportation*, 273 Kan. 261, 266, 43 P.3d 799 (2002) (quoting *Nero v. Kansas State University*, 253 Kan. 567, Syl. ¶ 1, 861 P.2d 768 [1993]).

In their counterpetition, the Belveals alleged that Flagstar had a duty to them when it "undertook the servicing, and collecting the same which included home retention efforts." But in Kansas, the relationship between a lender and a borrower is adversarial. *Bank IV Wichita v. Arn, Mullins, Unruh, Kuhn & Wilson*, 250 Kan. 490, 505, 827 P.2d 758 (1992). It is not the type of "'special relationship'" that warrants imposing a duty.

10

*Jack v. City of Wichita*, 23 Kan. App. 2d 606, 614, 933 P.2d 787 (1997). Flagstar, as the lender, had no duty to the Belveals, as the borrowers.

The Belveals argue that the existence of a duty is supported by the Restatement (Second) of Torts § 324A (1965) which states:

> "One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
>
> > "(a) his failure to exercise reasonable care increases the risk of such harm, or
> > "(b) he has undertaken to perform a duty owed by the other to the third person, or
> > "(c) the harm is suffered because of reliance of the other or the third person upon the undertaking."

The Belveals do not explain how the Restatement imposed a duty on Flagstar, nor do they cite any cases in which a court relied on § 324A to find that a lender or mortgage loan servicer owed a borrower a duty based on the undertaking theory. More importantly, Kansas courts have already determined that a lender does not have a duty to a borrower. See *Jack*, 23 Kan. App. 2d at 614.

The Belveals also rely on several cases in arguing that a duty existed. They first cite *Bank of America v. Narula*, 46 Kan. App. 2d 142, 261 P.3d 898 (2011). While the Belveals do not explain how *Narula* applies, it seems that they are relying on our court's finding that the bank breached its fiduciary duty. 46 Kan. App. 2d at 172-76. Our court has noted, however, that its ruling in *Narula* was based on the bank and the customer having a "longstanding, intricate relationship." *Tang v. Bank of Blue Valley*, No. 109,007, 2014 WL 702404, at *6 (Kan. App. 2014) (unpublished opinion). The Belveals do not allege such a relationship here. The Belveals also mention an opinion from the District Court of Johnson County, but that case did not even involve a negligence claim. Finally,

11

the Belveals again rely on *Sanchez*, claiming the case is nearly on point. But there, the district court did not even discuss negligence or the existence of a duty. Because Flagstar had no duty to the Belveals, we cannot find it negligent.

D.     *Breach of Contract*

Although the district court found the Belveals had failed to state valid breach of contract, good faith, and fair dealing claims, they do not raise these issues in their brief. Issues not briefed are waived or abandoned. *Kimball*, 292 Kan. at 889. Instead, in their reply brief, the Belveals respond to Flagstar's breach of contract arguments. Unfortunately for the Belveals, new issues may not be raised in a reply brief. See *City of Wichita v. McDonald's Corp.*, 266 Kan. 708, 724, 971 P.2d 1189 (1999). Because they did not brief the district court's dismissal of their breach of contract claim, the Belveals have waived or abandoned the issue.

E.     *Other Claims*

The Belveals also claim the district court erred in not considering whether Flagstar's conduct could have supported any other claim. They argue that under the standard for motions to dismiss for failure to state a claim, the district court was required to determine whether their counterpetition alleged facts sufficient to support a claim under any possible theory. The Belveals are correct. See *Nungesser v. Bryant*, 283 Kan. 550, Syl. ¶ 1, 153 P.3d 1277 (2007). But Flagstar filed a motion for judgment on the pleadings, not a motion to dismiss for failure to state a claim. While our court has stated that the two motions are governed by the same standard, *Purdum*, 48 Kan. App. 2d at 994, the Belveals do not explain what claim the district court should have unearthed in their counterpetition. The district court did not err in granting Flagstar's motion for judgment on the pleadings.

12

DID THE DISTRICT COURT ERR IN DENYING THE BELVEALS' MOTION TO AMEND?

Unless other circumstances exist, only the opposing party's written consent or the district court's leave, which should be freely given when justice requires, can authorize a pleading's amendment. K.S.A. 2016 Supp. 60-215(a)(2). When reviewing a district court's decision on a motion to amend pleadings, we use an abuse of discretion standard of review. *Thompson v. State*, 293 Kan. 704, 709, 270 P.3d 1089 (2011); *Kinell v. N.W. Dible Co.*, 240 Kan. 439, 444, 731 P.2d 245 (1987). Judicial discretion is abused if (1) no reasonable person would take the view adopted by the district court; (2) the decision is based on a legal error; or (3) the decision is based on a factual error. *Wiles v. American Family Life Assurance Co.*, 302 Kan. 66, 74, 350 P.3d 1071 (2015). The party claiming an abuse of discretion bears the burden of proving it. *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 935, 296 P.3d 1106, *cert. denied* 134 S. Ct. 162 (2013). The denial of a motion to amend is not reversible error "unless it affirmatively appears that the [denied] amendment . . . is so material it affects the substantial rights of the adverse party." *Hajda v. University of Kansas Hosp. Auth.*, 51 Kan. App. 2d 761, 774, 356 P.3d 1 (2015), *rev. denied* 303 Kan. 1077 (2016). A request to amend pleadings may be denied if the amendment sought would be futile. *Johnson v. Board of Pratt County Comm'rs*, 259 Kan. 305, 327, 913 P.2d 119 (1996) (quoting *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 [1962]).

At the outset, the Belveals claim the district court did not comply with Supreme Court Rule 165 (2017 Kan. S. Ct. R. 214) because it failed to provide sufficient findings of fact and conclusions of law as K.S.A. 2016 Supp. 60-252 requires. A party, however, must object to inadequate findings and conclusions to preserve the issue for appeal, which gives the district court an opportunity to correct any alleged inadequacies. *Fischer v. State*, 296 Kan. 808, 825, 295 P.3d 560 (2013). When no objection is made, we may presume the district court found all the facts necessary to support its judgment. *Dragon v. Vanguard Industries*, 282 Kan. 349, 356, 144 P.3d 1279 (2006). As the Belveals did not

13

object to the district court's findings or file a motion for amended or additional findings pursuant to K.S.A. 2016 Supp. 60-252(b), the issue has not been preserved for appeal. See *In re Marriage of Bradley*, 258 Kan. 39, 50, 899 P.2d 471 (1995).

It is unclear from the Belveals' brief whether they are challenging the district court's denial of their motion to file a third-party petition against Flagstar, their motion to amend their counterpetition to assert claims against Queen's Park and to interplead Roundpoint, or both. Because they do not mention their motion to file a third-party petition and their arguments appear to be directed mainly at Queen's Park and Roundpoint, it seems that the Belveals are appealing the district court's denial of their motion to amend their counterpetition and have waived or abandoned any claim concerning their other motion by failing to brief it. See *Kimball*, 292 Kan. at 889. But the confusion does not stop there. As the district court noted, it is difficult to discern from the Belveals' motion to amend what claims they wanted to assert. While their appellate brief is not any clearer, it seems that the Belveals wished to bring several claims against Queen's Park and Roundpoint.

A.      *Kansas Consumer Protection Act*

The Belveals first argue that when they attempted to modify their mortgage, Queen's Park and Roundpoint violated the KCPA by acting unconscionably. To bring an unconscionable acts claim, the plaintiff must show that the violation was connected with a consumer transaction. K.S.A. 50-627(a). A number of federal district courts have determined that mortgage modification and refinancing can be a consumer transaction. See *Sanchez*, 2014 WL 5800203, at *3-5; *Rogers v. Bank of America, N.A.*, No. 13-1333-CM, 2014 WL 3091925, at *1-2 (D. Kan. 2014) (unpublished opinion); *Schneider*, 2014 WL 219339, at *8. Those cases, however, do not help the Belveals because they are factually distinguishable.

In *Sanchez*, the bank initially approved the homeowner's modification request, but the modification was never finalized, allegedly because of the bank's misconduct. In *Rogers*, the bank solicited the homeowner to modify her loan but obstructed the process, eventually forcing the homeowner into bankruptcy. In *Schneider*, the bank denied the homeowners' application for refinancing. While the refinancing process never began in *Schneider*, the court determined that a consumer transaction occurred because the bank previously granted the homeowners a mortgage. 2014 WL 219339, at *8. Here, unlike in *Sanchez* and *Rogers*, both sides never agreed on modification. Queen's Park offered the Belveals modification, but they rejected its offer. Queen's Park had not previously granted a mortgage to the Belveals, so there was no consumer transaction.

B. *Breach of Contract*

The Belveals next argue that Queen's Park and Roundpoint's conduct during the modification attempts also constituted a breach of contract for violation of the implied duty of good faith and fair dealing. Inherent in Kansas contracts, except employment-at-will contracts, is the duty of good faith and fair dealing. *Waste Connections of Kansas, Inc. v. Ritchie Corp.*, 296 Kan. 943, 965, 298 P.3d 250 (2013). Whether this duty has been violated is a question of fact. 296 Kan. at 965. "'It is generally true, that the party who is guilty of the first breach of a contract can neither found a right of action upon such contract, nor make it the basis of defense to an otherwise just claim.' [Citation omitted.]" *Lumber Co. v. Lumber Co.*, 86 Kan. 131, 134, 119 P. 321 (1911). Here, because the Belveals breached first by falling behind on their mortgage payments, they cannot assert a breach of contract claim against Queen's Park.

C. *Truth in Lending Act*

The Belveals also argue that Queen's Park and Roundpoint violated the Truth in Lending Act (TILA) by failing to give notice of a new creditor and new servicer within

15

30 days. In their motion to amend, the Belveals cited 15 U.S.C. § 1641(g) (2012), a provision of TILA, which requires the new owner or assignee of a mortgage loan to notify the borrower of certain information within 30 days after the debt is transferred or assigned. The Belveals also cite 12 U.S.C. § 2605 (2012), but it is unclear to us how it is relevant. The district court determined that the requirements of 15 U.S.C. § 1641(g) had been satisfied when Queen's Park was substituted as plaintiff. But the district court further concluded that even if the requirements had not been satisfied, the statute did not apply because Queen's Park was not a creditor because it was not the entity to which the debt was initially payable. The district court also determined that the Belveals had no cause of action against Roundpoint.

Two of the district court's conclusions are incorrect. First, 15 U.S.C. § 1641(g) requires that specific information be provided to the borrower. The motion for substitution contained little, if any, of that information. While the motion for substitution may have at the very least notified the Belveals that Queen's Park now owned the mortgage loan, it was no substitute for compliance with the statute. Second, when considering whether Queen's Park was a "creditor," the district court looked to the definition provided in 15 U.S.C. § 1602(g) (2012); Queen's Park makes the same argument in its brief. 15 U.S.C. § 1641(g) states, however, that the "new owner or assignee" has the responsibility of providing notice to the borrower. See *Wells Fargo Bank v. Eastham*, 44 Kan. App. 2d 1059, 1062, 241 P.3d 1027 (2010) (noting 15 U.S.C. § 1641 is separate provision of TILA providing liability for assignee).

The district court's third conclusion appears to be correct. According to 15 U.S.C. § 1641(f)(1), a mortgage loan servicer is not treated as an assignee of the mortgage loan unless the servicer owns or owned the mortgage loan. In July 2013, Flagstar sent the Belveals a notice indicating that the servicing of their mortgage loan would be transferred to Roundpoint. In August 2013, Roundpoint sent the Belveals a notice that suggested the ownership of their mortgage loan had been assigned, sold, or transferred to Roundpoint

16

and that Roundpoint was the new servicer of their mortgage loan. The record, however, shows that the mortgage was assigned to Queen's Park in July 2013, but there is no indication that Roundpoint owned the mortgage. Because it seems that Roundpoint was only the servicer of mortgage loan, it cannot be treated as an assignee. As a result, the Belveals had no cause of action against Roundpoint under 15 U.S.C. § 1641.

The district court was incorrect in concluding that Queen's Park had satisfied the notice requirements of 15 U.S.C. § 1641(g) and that the statute did not apply to Queen's Park because it was not a creditor. However, it is unclear whether the Belveals had a viable claim. Both their motion to amend and their brief are difficult to discern. Also, both before the district court and before us on appeal, the Belveals have overlooked a prerequisite to bringing a claim under 15 U.S.C. § 1641. Before any plaintiff can bring a claim under that statute, such plaintiff must show that the violation was "apparent on the face of the disclosure statement. 15 U.S.C. §§ 1641(a), (e)(1)(A) (2006)." *Eastham*, 44 Kan. App. 2d at 1062. Nowhere in the Belveals' motion to amend or in their briefs do they make any argument that the alleged violation was apparent on the face of the disclosure statement. Because the Belveals failed to show that a prerequisite for their claim existed, the district court was correct in dismissing it. See *Wiles*, 302 Kan. at 74; *Gannon v. State*, 302 Kan. 739, 744, 357 P.3d 873 (2015) (district court right for wrong reason).

D.    *Kansas Statutory Claim*

The Belveals further argue the district court erred in not allowing them to bring a claim under K.S.A. 58-2264, a statute involving charges other than premiums on insurance written in connection with a loan on real estate. They did not mention this statute in their motion to amend but raised it during the hearing on their motion. Again, it is unclear to us, after reviewing both the hearing transcript and their brief, what the Belveals tried to allege. The district court apparently did not think that the Belveals were

17

asserting a new claim because it did not even address the argument. To the extent the Belveals were trying to bring some type of claim under K.S.A. 58-2264, we can find no error on the part of the district court in its handling of the matter. See *Wiles*, 302 Kan. at 74.

E.      *Claims Raised for First Time*

The Belveals also raise two claims for the first time on appeal. First, they appear to argue that Flagstar's failure to follow loss mitigation regulations, specifically 24 C.F.R. § 203.605, flowed to Queen's Park, as the substituted plaintiff, and Queen's Park should have shown compliance with the servicing requirements. Second, they argue that Queen's Park and Roundpoint violated the Real Estate Settlement Procedures Act (RESPA), citing 12 C.F.R. § 1024.41 and 12 U.S.C. § 2605. While the Belveals mentioned RESPA incidentally in their motion to amend, they did not mention the statutes they cite in their brief. They also did not reference 24 C.F.R. § 203.605 in their motion to amend. Issues not raised before the district court cannot be raised for the first time on appeal. *Wolfe Electric, Inc. v. Duckworth*, 293 Kan. 375, 403, 266 P.3d 516 (2011). While exceptions to this rule exist, the appellant must explain why the issue should be considered. See *In re Estate of Broderick*, 286 Kan. 1071, 1082, 191 P.3d 284 (2008), *cert. denied* 555 U.S. 1178 (2009) (list of recognized exceptions); Kansas Supreme Court Rule 6.02(a)(5) (2017 Kan. S. Ct. R. 34). Because the Belveals have failed to do this, the issues are not properly before us.

F.      *Claims Raised Incidentally*

The Belveals incidentally claim that Queen's Park and Roundpoint violated the uniform consumer credit code—specifically K.S.A. 16a-3-402 and K.S.A. 16a-3-207— and incidentally mention misinterpretation of mortgage insurance premium payments in their brief. They seem to allege that some type of notice was required when their

18

mortgage was sold, but it is unclear from the Belveals' brief how K.S.A. 16a-3-402 is relevant. Claims raised incidentally without argument are deemed abandoned. See *Friedman v. Kansas State Bd. of Healing Arts*, 296 Kan. 636, 645, 294 P.3d 287 (2013).

DID QUEEN'S PARK HAVE STANDING TO SEEK FORECLOSURE?

Standing is a part of subject matter jurisdiction and may be raised at any time. *Vorhees v. Baltazar*, 283 Kan. 389, 397, 153 P.3d 1227 (2007).

> "Standing is a question of whether the plaintiff has alleged such a personal stake in the outcome of a controversy as to warrant invocation of jurisdiction and to justify exercise of the court's remedial powers on his or her behalf. A party must have a sufficient stake in the outcome of an otherwise justiciable controversy in order to obtain judicial resolution of that controversy. The party must have personally suffered some injury and there must be a causal connection between the injury and the challenged conduct." *Mortgage Electronic Registration Systems v. Graham*, 44 Kan. App. 2d 547, Syl. ¶ 1, 247 P.3d 223 (2010).

Whether a party has standing is a question of law over which we exercise unlimited review. *Board of Sumner County Comm'rs v. Bremby*, 286 Kan. 745, Syl. ¶ 1, 189 P.3d 494 (2008).

K.S.A. 2016 Supp. 60-217(a)(1) states in part: "An action must be prosecuted in the name of the real party in interest." The statute then provides a list of parties that "may sue in their own names without joining the person for whose benefit the action is brought," including "a trustee of an express trust." K.S.A. 2016 Supp. 60-217(a)(1)(F). A district court may not dismiss a case because the plaintiff is not the real party in interest unless an objection is made and "reasonable time has been allowed for the real party in interest to ratify, join or be substituted into the action." K.S.A. 2016 Supp. 60-217(a)(3).

19

The Belveals seem to argue that Queen's Park is not the real party in interest and, thus, lacks standing to seek foreclosure because Queen's Park's trustee, which they believe is U.S. Bank, is not a party to the case. As the district court noted, however, K.S.A. 2016 Supp. 60-217(a)(1) states that trustees may sue in their own names, but it does not require them to do so nor does it forbid an express trust from suing in its own name. While there appears to be a split of authority on whether a trust has the capacity to sue on its own, compare *Western Life Trust v. State*, 536 N.W.2d 709, 712 (N.D. 1995), with *Emerald Investors Trust v. Gaunt Parsippany Partners*, 492 F.3d 192, 198 n.10 (3d Cir. 2007), the Belveals do not cite any Kansas precedent supporting their position nor have we found any. Given the plain language of K.S.A. 2016 Supp. 60-217, we are unwilling to disturb the district court's findings on this point. Queen's Park is the real party in interest and has standing to seek foreclosure.

### DID THE DISTRICT COURT ERR IN GRANTING QUEEN'S PARK'S MOTION FOR SUMMARY JUDGMENT?

A motion for summary judgment should be granted when the pleadings and evidence show "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." K.S.A. 2016 Supp. 60-256(c)(2).

> "'The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and when we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied.' [Citation omitted.]" *Drouhard-Nordhus v. Rosenquist*, 301 Kan. 618, 622, 345 P.3d 281 (2015).

"'The main purpose of a mortgage is to insure the payment of the debt for which [it] stands as security; and foreclosure is allowed when necessary to carry out that objective.' [Citation omitted.] Therefore, in order to grant summary judgment in a mortgage foreclosure action, the trial court must find undisputed evidence in the record that the defendant signed a promissory note secured by a mortgage, that the plaintiff is the valid holder of the note and the mortgage, and that the defendant has defaulted on the note." *Bank of America v. Inda*, 48 Kan. App. 2d 658, 664, 303 P.3d 696 (2013).

The Belveals raise several issues relating to the district court's grant of summary judgment.

A.      *Carrie*

The Belveals first argue that the judgment entered against Carrie should be vacated because the district court lacked jurisdiction to enter a judgment against her since she no longer had an interest in the property after the divorce. In rem judgments involve or determine "'the status of a thing, and therefore the rights of persons generally with respect to that thing.'" *JPMorgan Chase Bank v. Taylor*, No. 111,754, 2015 WL 4094278, at *8 (Kan. App. 2015) (unpublished opinion) (quoting Black's Law Dictionary 913 [10th ed. 2014]). An in rem foreclosure determines the borrowers' right to a piece of property without holding them personally liable. See *Home State Bank v. Johnson*, 240 Kan. 417, 424-25, 729 P.2d 1225 (1986).

The divorce decree indicates that Jason was awarded the property and became solely responsible for any indebtedness. The record is clear that Carrie did not sign the note, but she did sign the mortgage. While she had no obligation to repay the note, her interest in the property continued. Carrie's name was on the mortgage, and the district court's in rem judgment against her was appropriate. See *Johnson*, 240 Kan. at 424-25. The Belveals provide no authority supporting their theory that the divorce absolved

21

Carrie's liability under the mortgage, nor do they show that a divorce prevents a lender from foreclosing on the spouse who was not awarded the property.

B.      *Controverted Facts*

The Belveals next argue that summary judgment was inappropriate because some facts were controverted. The district court, in its memorandum opinion, noted that the Belveals' opposition to summary judgment purported to controvert the facts alleged by Queen's Park, but it determined that the Belveals' statement of facts was not supported by the record and its arguments were not supported by the facts or were irrelevant to summary judgment. In their brief on appeal, the Belveals list a series of numbers, which presumably are a reference to a list of controverted facts in their opposition to summary judgment, but they do not provide any record citation or further detail. They also vaguely suggest that affidavits from Jason and their attorney show that the facts were controverted, but they do not elaborate. Because the Belveals do not specifically state which facts were controverted or how, they have not met their burden of presenting evidence showing that a material fact was disputed. See *Rosenquist*, 301 Kan. at 622-23.

C.      *K.S.A. 58-2323*

The Belveals also argue that the district court contradicted the plain language of K.S.A. 58-2323 by stating in its memorandum opinion that the mortgage follows the note. K.S.A. 58-2323 states:  "The assignment of any mortgage as herein provided shall carry with it the debt thereby secured." While K.S.A. 58-2323 does provide that the note follows the mortgage, our court has previously stated that generally the mortgage follows the note. *U.S. Bank NA v. McConnell*, 48 Kan. App. 2d 892, Syl. ¶ 6, 305 P.3d 1, *rev. denied* 298 Kan. 1208 (2013). Notwithstanding these arguments, we note the Belveals' argument is moot because Queen's Park is the current holder of the note and the current assignee of the mortgage.

D.    *Loss Mitigation Defense*

The Belveals further argue the district court erred in granting Queen's Park summary judgment without considering their affirmative defense that Queen's Park had failed to pursue loss mitigation. However, the district court did consider the Belveals' arguments that Queen's Park was required to seek loss mitigation in its memorandum opinion but ultimately rejected them.

E.    *In Personam Judgment*

The Belveals finally argue that K.S.A. 40-3511 prevented the district court from entering an in personam judgment. K.S.A. 40-3511 states in part:  "With respect to owner-occupied, single-family dwellings, the mortgage guaranty insurance policy shall provide that the borrower shall not be liable to the insurance company for any deficiency arising from a foreclosure sale." As the district court found, the statute does not state that a lender cannot hold a borrower personally liable in a foreclosure action. Parenthetically, we note this issue is not ripe because it does not appear that a foreclosure sale has taken place or that a deficiency judgment has been entered. See *Shipe v. Public Wholesale Water Supply Dist. No. 25*, 289 Kan. 160, 170, 210 P.3d 105 (2009) (defining ripeness).

The district court did not err in granting Queen's Park's motion for summary judgment.

HAVE JUDICIAL SHORTCUTS ALLOWED THE MORTGAGE INDUSTRY
TO ENGAGE IN DECEPTIVE "MORTGAGE LAUNDERING"?

It is unclear from the Belveals' brief what claim of error, if any, they are trying to allege. Because they fail to cite any pertinent authority, which is akin to failing to brief an

23

issue, we deem this issue waived and abandoned. See *University of Kan. Hosp. Auth. v. Board of Comm'rs of Unified Gov't*, 301 Kan. 993, 1001, 348 P.3d 602 (2015).

## DID THE DISTRICT COURT ERR IN IMPOSING SANCTIONS AGAINST THE BELVEALS' ATTORNEY?

When reviewing a district court's decision on a motion for sanctions, we apply an abuse of discretion standard. *Stone v. City of Kiowa*, 263 Kan. 502, 518, 950 P.2d 1305 (1997). As before, judicial discretion is abused if (1) no reasonable person would take the view adopted by the district court; (2) the decision is based on a legal error; or (3) the decision is based on a factual error. *Wiles*, 302 Kan. at 74. The Belveals bear the burden of proof on this point. See *Northern Natural Gas Co.*, 296 Kan. at 935.

Under K.S.A. 2016 Supp. 60-256(e)(1), affidavits used to support or oppose a motion for summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence and show that the affiant . . . is competent to testify on the matters stated." Affidavits may also be used to show that the party opposing summary judgment cannot, for specified reasons, present facts necessary to support its opposition. K.S.A. 2016 Supp. 60-256(f). If, however, a party submits an affidavit "in bad faith or solely for delay, the court must order the submitting party or attorney to pay the other party the reasonable expenses, including attorney's fees, it incurred as a result." K.S.A. 2016 Supp. 60-256(g).

The Belveals' attorney seems to suggest that both of her affidavits attached to the brief in opposition to Queen's Park's motion for summary judgment were intended to be K.S.A. 2016 Supp. 60-256(f) affidavits. The district court, in imposing sanctions, rejected the Belveals' contention that the affidavits were not sanctionable under K.S.A. 2016 Supp. 60-256(g), determined that both affidavits were submitted in bad faith and solely for delay, and concluded that the decision to impose sanctions was governed by a

24

reasonable competent attorney standard. Nothing in the Belveals' brief persuasively convinces us that the district court's decision was unreasonable, based on a legal error, or based on a factual error. In fact, the Belveals fail to cite the record, cite pertinent authority, or even use the phrase "abuse of discretion." Because they have not provided any persuasive argument, the Belveals have not met their burden proving that the district court abused its discretion.

Affirmed.